MIAMI CORPORATION, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (4th Division)   No. 1—89—1158

Opinion filed April 4, 1991.

Roland W. Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellant.

Richard A. Hanson, of McDermott, Will & Emery, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

The Illinois Department of Revenue, defendant, appeals from the portion of a circuit court of Cook County decision finding that the application of a statutory apportionment formula to plaintiff taxpayer, Miami Corporation, grossly distorted the income attributable to plaintiff's Illinois business activities. The trial court found that plaintiff was entitled to utilize an alternative method of apportionment, separate accounting, to allocate the income derived from its Louisiana operations.

On appeal, defendant raises the following issues: (1) whether the trial court erred in setting aside defendant's decision to apply the statutory three-factor formula to plaintiff; (2) whether plaintiff is entitled to deviate from the statutory formula and utilize an alternative means of allocating its income; and (3) whether the trial court erred in selecting the separate accounting method as the alternative means of allocating plaintiff's income.

We affirm.

This appeal arises from the trial court's setting aside a portion of defendant's administrative decision which denied plaintiff income tax refunds for years 1978 through 1982, inclusive.

Plaintiff is a Delaware corporation with its principal place of business and commercial domicile in Chicago. Plaintiff was founded by the Dearing family in 1917 for the purpose of overseeing the family's personal investment portfolio. Income is derived through investments in real estate, stocks, and other securities. Plaintiff owns real estate in Louisiana, Florida, and Oregon.

In the mid-1920's, plaintiff separated its oil and gas and real estate investments from its securities portfolio. Plaintiff established Department A for its securities and stock holdings. Department B was established for its real estate holdings in Louisiana, Oregon, and Florida.

Plaintiff's real estate holdings in Louisiana include 250,000 acres of land. Oil and gas deposits were discovered on the land in Louisiana several years after plaintiff came into existence. Plaintiff does not engage in developing these reserves but, rather, contracts with independent oil and gas companies which explore, drill and produce oil and gas from the reserves. Plaintiff only retains a passive royalty interest in the reserves.

The primary source of revenue from land owned in Oregon and Miami is derived from the sale of timber rights. Plaintiff has two employees in Oregon and six to seven employees in Miami. The timber

operations are supervised by plaintiff's corporate offices in Chicago. Plaintiff has 35 employees in its Chicago office and one employee, Roger Vincent, in its Louisiana office. Vincent was hired in 1966 to locally manage plaintiff's Louisiana land investments. Prior to Vincent's employment, matters relating to the Louisiana investments were managed out of the Chicago office.

Plaintiff has filed timely income tax returns annually in Illinois, Louisiana, Florida, and Oregon. The Illinois income taxes paid for 1978 through 1982 were as follows:

| 1978 | $ 5,344 |
| 1979 | $ 8,188 |
| 1980 | $ 8,068 |
| 1981 | $597,090 |
| 1982 | $101,002 |

Defendant issued a notice for additional tax liability on October 21, 1982, for the following years and amounts:

| 1978 | $ 49,216 |
| 1979 | $133,465 |
| 1980 | $370,732 |

On February 4, 1983, plaintiff filed objections to the proposed deficiencies. On February 22, 1984, defendant issued another notice to plaintiff proposing additional increases in plaintiff's income tax liability for the following years and amounts:

| 1981 | $289,032 |
| 1982 | $933,542 |

Plaintiff also objected to these proposed amounts.

On January 29, 1985, defendant sent a notice of deficiency to plaintiff for the amounts previously set forth. Plaintiff paid the liability and filed a claim for refund on September 26, 1986. The following figures summarize the amounts in question:

| Year | Originally Paid | Notice of Deficiency | Requested Refund |
|---|---|---|---|
| 1978 | $5,344 | $49,216 | $49,216 |
| 1979 | $8,188 | $133,465 | $126,419 |
| 1980 | $8,068 | $370,732 | $327,236 |
| 1981 | $597,090 | $289,032 | $266,258 |
| 1982 | $101,002 | $686,544 | $930,424 |

Defendants arrived at the dollar amounts owed to the State by determining what percentage of plaintiff's business income was apportionable to Illinois and taxable within the State. The Illinois apportionment percentage used by defendant is commonly known as the three-factor formula. This formula is statutory and is set forth in the

Illinois Income Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 3—304). The three factors used in the formula are property, payroll and sales. These factors each contain a numerator which represents the income derived from business conducted in Illinois and a denominator which represents the income derived from any other State. The average of the fractional amounts represents what portion of business will be attributable to Illinois and is subject to taxation.

The three-factor formula is illustrated as follows:

$$\frac{\dfrac{\text{Illinois Property}}{\text{Property In Other States}} + \dfrac{\text{Illinois Payroll}}{\text{Payroll In Other States}} + \dfrac{\text{Illinois Sales}}{\text{Sales In Other States}}}{3}$$

On October 20, 1986, plaintiff's request for a refund was denied by notice from defendant. On December 3, 1986, plaintiff filed a letter of protest and a request for a hearing on this matter. At the hearing, it was determined that plaintiff's income was business income derived from a unitary business; that the use of the statutory three-factor formula was the appropriate means of apportioning business income derived from plaintiff's activities in Illinois; and that even if the other means of determining the percentage of business to be apportioned to Illinois were available to plaintiff, the separate accounting method would be an inappropriate alternative. The deficiency was upheld and plaintiff's requested refund was denied. Plaintiff's Illinois income tax was increased from approximately $719,000 to more than $2.4 million under the prescribed three-factor formula.

Subsequently, plaintiff filed a complaint seeking administrative review of defendant's decision. The trial court reviewed each of the factors in the three-factor formula and determined that the factors, individually and in combination, did not fairly reflect plaintiff's income in Illinois. The trial court set aside the portion of defendant's administrative decision applying the three-factor formula to plaintiff but sustained the portion of the decision finding plaintiff a unitary corporation. The trial court also held, considering the nature and structure of plaintiff's operation, that separate accounting was the most appropriate method to source plaintiff's income. Separate accounting allows for the isolation of a portion of a business operated in one State from other portions of the business operated in other States. Defendant now appeals from the portion of the trial court's decision with respect to its rejection of the three-factor formula and its application of the

separate accounting method as an alternative means of allocating plaintiff's income.

■ A corporate taxpayer that derives its income from Illinois and one or more other States may be taxed in Illinois according to the income generating activities conducted within the State. (Ill. Rev. Stat. 1983, ch. 120, par. 3—304.) However, "the amount of income fairly attributable to activities within the taxing State must be discerned before income tax constitutionally may be imposed." *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 368.

The United States Supreme Court in *Container Corp. of America v. Franchise Tax Board* (1983), 463 U.S. 159, 77 L. Ed. 2d 545, 103 S. Ct. 2933, states:

> "Under both the Due Process and the Commerce Clauses of the Constitution, a State may not, when imposing an income-based tax, 'tax value earned outside its borders.' [Citation.] In the case of a more-or-less integrated business enterprise operating in more than one State, however, arriving at precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice. [Citations.] For this reason and others, we have long held that the Constitution imposes no single formula on the States ***." *Container Corp.*, 463 U.S. at 164, 77 L. Ed. 2d at 552, 103 S. Ct. at 2939.

■ Generally, in Illinois there are several methods available to State tax officials in determining the net income that may be taxed by the State within constitutional bounds. (*Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 115.) One method is commonly known as separate accounting. This method is employed when the income-producing activities and sources within the State can be differentiated from the income-producing activities and sources outside of the State. *Citizens Utilities Co. v. Department of Revenue* (1986), 111 Ill. 2d 32, 39.

■ Another method of accounting is formula apportionment, which is used when the income-producing activities and sources cannot be isolated from the out-of-State activities and sources. "Thus, what is referred to as 'formula apportionment' is available for income allocation in cases where separate accounting does not suffice." (*General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 369.) Formula apportionment is usually employed to allocate the net income of a unitary business.

■ Our supreme court in *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, defined a unitary business as:

"[A] group of functionally integrated corporate units which are so interrelated and interdependent that it becomes relatively impossible for one State to determine the net income generated by a particular corporation's activities within the State and therefore allocable to that State for purposes of taxation." *Caterpillar*, 84 Ill. 2d at 116.

The trial court, in the instant case, upheld defendant's decision that plaintiff was a unitary corporation. The court concluded that plaintiff's operations were highly integrated and that the benefits that ensued from such operations were from an umbrella of centralized interaction between the divisions.

Defendant argues that because the decision finding plaintiff to be a unitary business is undisputed, the appropriate method of accounting would be the three-factor formula as set forth in section 304(a) of the Illinois Income Tax Act. (Ill. Rev. Stat. 1983, ch. 120, par. 3—304(a).) Defendant contends that in order to overturn its decision to apply the three-factor formula, plaintiff bears the burden of showing by clear and cogent evidence that the income attributed to Illinois is out of all proportion to the business transacted in Illinois. (*Moorman Manufacturing Co. v. Bair* (1978), 437 U.S. 267, 274, 57 L. Ed. 2d 197, 205, 98 S. Ct. 2340, 2345.) We agree with defendant that plaintiff must bear this burden but, we find, as the trial court so found, that plaintiff has carried its burden. The three-factor formula, as applied to plaintiff, grossly distorts the income that should be apportioned to Illinois.

While we acknowledge that the increase of plaintiff's liability from approximately $719,000 to more than $2.4 million does not necessarily prove malapportionment (see *Citizens Utilities Co. v. Department of Revenue* (1986), 111 Ill. 2d 32), we find that the distortion created by the use of the formula amounts to an unfair representation of plaintiff's activities with the State.

■ The property factor in the formula was designed to measure the average value of real and *tangible* property, whether owned or rented, used in the taxpayer's business. Property which is owned is valued at its original cost. Rented property is valued at eight times the net annual rental rate. (Ill. Rev. Stat. 1983, ch. 120, par. 3—304(a)(1)(A).) However, the oil and gas reserves in Louisiana which generated in excess of 80% of plaintiff's income are not reflected in the formula because these elements are *intangibles*.

Relying upon *Atlantic Richfield Co. v. Alaska* (Alaska 1985), 705 P.2d 418, *appeal dismissed* (1986), 474 U.S. 1043, 88 L. Ed. 2d 754, 106 S. Ct. 774, the trial court, in the instant case, noted that the

value of elements is not recognized under traditional apportionment formulas. In *Atlantic Richfield*, the supreme court of Alaska found that because of the unique character of oil and gas reserves, its value may not be recognized under the traditional formula apportionment methods. *Atlantic Richfield*, 705 P.2d at 426.

Similarly, the trial court, in the instant case, found that "[t]he singular structure and operation of the taxpayer negatives the application of the property factor. It produces a distortive effect because of the individual characteristics of the taxpayer's operations and its tangible property." As plaintiff argues, the land in Louisiana valued at its original or historical cost would not represent the true value of the oil and gas reserves. The use of the three-factor formula would allow for the lease of the Chicago office (capitalized at eight times its rental value for purposes of inclusion in the property factor), to be worth more than the 250,000 acres of Louisiana land containing the oil and gas reserves.

■ The trial court also found that the application of the payroll factor was inappropriate due to plaintiff's unusual corporate structure. The trial court stated that "[t]he payroll factor *** from the point of view of economic realities, does not give effect to the substantial cost of the out-of-state activities performed by the independent contractors as was heretofore delineated by this Court." One of plaintiff's officers testified that the compensation paid for support services to Louisiana totalled only 4% of the Chicago payroll. We defer to the trial court's decision with respect to the applicability of this factor.

■ The final factor that the trial court considered was the sales factor. The sales factor measures *receipts* or gross revenues. The court defined this factor so as to include *"receipts* from sales of property, *** services, rentals, royalties, and business operations, generally."* (Emphasis added.) In applying this factor to plaintiff, the trial court found that defendant had erred in interpreting this factor as being based upon *income* generated in each State.

■ The trial court correctly held that the sales factor is based upon *receipts* and not *income*. Defendant now concedes that " 'receipts' or 'sales' or 'gross income' [should have been used] rather than 'income' which is reflective of other factors of the business." Moreover, plaintiff argues defendant included plaintiff's gross dividends as Illinois receipts which substantially overstates its income from Illinois. We find that the trial court did not err in finding that plaintiff had met its burden by producing clear and cogent evidence that the income attributed to Illinois is out of appropriate proportion to the busi-

ness transacted in Illinois. See *Hans Rees' Sons, Inc. v. North Carolina* (1931), 283 U.S. 123, 75 L. Ed. 879, 51 S. Ct. 385.

Next defendant claims that plaintiff failed to meet its burden of establishing that it was entitled to deviate from the statutory formula and utilize an alternative method of allocation under section 304(f) of the Illinois Income Tax Act. (Ill. Rev. Stat. 1983, ch. 120, par. 3—304(f).) The section provides:

"If the allocation and apportionment provisions of subsections (a) through (e) do not fairly represent the extent of a person's business activity in this State, the person may petition for, or the Director may require, in respect of all or any part of the person's business activity, if reasonable:

(1) Separate accounting;

(2) The exclusion of any one or more factors;

(3) The inclusion of one or more additional factors which will fairly represent the person's business activities in this State; or

(4) The employment of any other method to effectuate an equitable allocation and apportionment of the person's business income." Ill. Rev. Stat. 1983, ch. 120, par. 3—304(f).

When a particular method of accounting leads to a grossly distorted result, an alternative method of apportionment must be used. (86 Ill. Adm. Code §100.3700(a) (1985).) In the instant case, the trial court stated:

"The Court not only exams [*sic*] each factor, but also the combined effect of all the factors. In this case, the totality of all the factors results in gross distortions. The imperfections that exist do not balance each other out."

■■ We find that since the application of the three-factor formula leads to gross distortions of plaintiff's income-producing activities or sources in Illinois, an alternative form of apportionment is appropriate.

■■ Finally, defendant contends that even assuming, *arguendo*, that plaintiff was entitled to section 304(f) relief, the trial court erred in selecting the separate accounting method. The separate accounting method "attempts to segregate and identify the sources or transactions which account for the generation of business income." (*Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 115.) Defendant reasons that because plaintiff is a unitary business, the separate method of accounting would be inappropriate in apportioning plaintiff's income. We disagree.

Plaintiff's most profitable operation is its oil and gas reserves located in Louisiana. These reserves generated in excess of 80% of plaintiff's total income. We previously held that the application of the three-factor formula did not fairly represent plaintiff's activities in Illinois with respect to the Louisiana property.

In *Atlantic Richfield v. Alaska*, the supreme court of Alaska described the problems in apportioning the income of unitary oil and gas businesses under the three-factor method and held that the separate accounting method would be more appropriate for these types of unitary businesses. The court stated:

> "A unique characteristic of unitary oil and gas businesses is that the major income-producing element is the value of the oil and gas reserves in the ground. While this element can be readily identified, it is not recognized under traditional formula apportionment methods. ***
>
> * * *
>
> *** [S]eparate accounting, not formula apportionment, is the prevailing method throughout the United States for reporting income for oil production." *Atlantic Richfield Co.*, 705 P.2d at 426.

We agree with the *Atlantic Richfield* court and hold that the trial court, in the instant case, properly found that the separate accounting method was the appropriate method to apply to plaintiff.

Defendant also argues that even if the separate accounting method is found to be appropriate, the case must be remanded to determine the correct amounts as a result of the implementation of this accounting method. We do not find this argument persuasive, as the trial court set forth in its March 31, 1989, judgment order the exact dollar refund amounts due plaintiff. Moreover, defendant does not present this court with any other figures or basis for refuting the trial court's calculations. We, therefore, defer to the trial court's findings with respect to the refund amounts owed to plaintiff.

For the foregoing reasons, the decision of the circuit court is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.