625 A.2d 179

John C. NORRIS, Recorder of Deeds
of York County, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent,

John C. NORRIS, Ex–Officio, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1992.

Decided May 4, 1993.

As Amended Aug. 9, 1993.

John W. Thompson, Jr., for petitioner.

Ronald H. Skubecz, Sr. Deputy Atty. Gen., for respondent.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

DOYLE, Judge.

John C. Norris appeals from two decisions of the Board of Finance and Revenue (Board) which denied Norris' Petitions for Review seeking abatement of penalties assessed against him by the Department of Revenue (Department) pursuant to the Fiscal Code.[1] The cases were consolidated by agreement of the parties.

The parties stipulated to the following relevant facts. Norris served as the Recorder of Deeds of York County from January 1978 until January 1990. Norris' official duties required him to collect and transmit realty transfer taxes and writ taxes no later than five days after the close of the month of collection.[2] A fair summary of the correspondence in the record by stipulation indicates that the Department of Revenue was pressuring Norris in mid–1978 to join the Common-

1. Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §§ 1–1804.
2. The Fiscal Code provides, in relevant part, that:
   On the fifth day of each month, and at such times and with such frequency as may be prescribed by the Secretary of Revenue, it shall be the duty of each judicial officer of a court not of record, city officer and county officer to render to the Department of Revenue, under oath or affirmation, returns of all monies or as much as may be prescribed by the Secretary of Revenue, received during the applicable period for the use of the Commonwealth, designating, under proper headings, the source from which such moneys were received, and to pay the same into the State Treasury, through the Department of Revenue, less any compensation and reimbursement for expenses allowable by law for having made the collection.

wealth's automated cash management program which electronically transmitted tax collections on a daily basis directly to the Department. By a letter dated July 5, 1978, the Department ordered Norris to join the program. Norris' attorney responded to the Department, by letter dated July 10, 1978, that Section 901.1 of the Fiscal Code, 72 P.S. § 901.1, did not require Norris to join the program. Indeed, Section 901.1 only requires that county officers receiving money on behalf of the Commonwealth "establish at any bank or savings and loan association ... an insured interest-bearing account and therein deposit all moneys received...."[3]

The Department warned Norris by a letter dated October 30, 1979 that his reports and accompanying payments were late and that he could be held personally liable for a penalty of ten per centum of the amount of money collected.[4] From February to December 1985, Norris was from one to thirteen days late in the transmission of such taxes for each month of 1985. (Stipulation of Facts No. 10 and 12). On December 9, 1986, the Department issued a Notice of Settlement for the 1985 fiscal year, assessing penalties of $362,558.99 for the late transmission of transfer taxes and $1,218 for late transmission of writ taxes.[5]

Norris filed a timely request for resettlement of the penalties assessed for the 1985 taxes, which was refused by the Department. Norris then filed a Petition for Review with the Board seeking abatement of the late reporting and late payment penalties which was denied by the Board on October 27, 1987. On November 17, 1987, Norris filed a Petition for

3. Section 901.1 of the Act of April 9, 1929, P.L. 343, *added by* the Act of December 3, 1976, P.L. 1274.

4. Section 4 of the Fiscal Code provides that:
    Any judicial officer of a court not of record, city officer or county officer who shall refuse or neglect to make the return and payment required by Section 901 of this article, [72 P.S. § 901] shall be personally liable for a penalty of ten per centum of the amount of money collected during the period to which the return and payment apply, and which shall be added to the amount found due.
    72 P.S. § 1710.

5. Stipulation of Facts No. 9.

Review with our Court seeking review of the Board's order and abatement of the penalties.

By letter of December 16, 1987, the Department again requested Norris's participation in its cash management program. He again refused. On April 22, 1990, the Department issued a Notice of Settlement assessing Norris as "ex officio" a penalty of $402,204.00. This second penalty was based on Norris' late transmission of transfer and writ taxes in 1986 and 1987. The Department refused Norris' request for resettlement. The Board denied Norris' Petition for Review by an opinion and order dated April 23, 1991. Norris filed a Petition for Review with our Court, which was consolidated by agreement with the first appeal.

Norris argues that the understaffing of his office was the cause of his late filings. Norris' staff consisted of 11 employes in 1978 and did not increase until 1986 when increases in staff were approved by the county, raising the number of employes to 14 in 1989. However, the number of instruments processed rose from 22,000 in 1982 to 57,500 in 1986 and the time lag in indexing the instruments rose from 1 day to 10 during that period. For all three years in question, all taxes and interest were remitted by Norris and received by the Department; the penalties were assessed only because Norris' reports were late.

A comparison with other counties shows that in 1985, except for Norris, although 34 counties filed late reports and 1 county was late in remittance, the Department assessed no penalties in those cases at all. The Department destroyed all realty transfer tax transmission records prior to 1985 and all writ tax transmission records prior to 1986 have been destroyed pursuant to regularly promulgated Commonwealth record retention schedules, so we cannot determine the regularity of penalties assessed for late tax transmission prior to 1984. Furthermore, from March 1984 to March 1988, the Board granted all but four of the petitions to abate penalties filed with it. However, the Board's record of abatement petitions indicates that those penalties which the Board refused to abate, which involved only three petitions, amounted to a total of only

$926.39; on the other hand, two of the petitions for abatement which were granted were each for over $100,000.

On appeal, Norris argues that: (1) the penalties are unconscionable because the Department is selectively enforcing them against Norris and thus the penalties constitute an abuse of administrative discretion or capricious and arbitrary action, (2) the penalties were assessed as retaliation for Norris's refusal to join the cash management program, and (3) the penalty for 1986–87 was barred by the two-year statute of limitation found at 42 Pa.C.S. § 5524.[6]

█ We begin our analysis by noting that both parties agree that the abatement of the penalties is a discretionary act by the Board. Although on appeal from the actions of most administrative agencies judicial discretion may not be substituted for administrative discretion absent bad faith, capricious action, or abuse of power by the administrative agency, *City of Pittsburgh Commission of Human Relations v. U.S. Steel Corp.*, 127 Pa.Commonwealth Ct. 646, 562 A.2d 940 (1989), *petition for allowance of appeal denied*, 524 Pa. 631, 574 A.2d 72 (1990), this standard does not apply to our review of decisions of the Board of Finance and Revenue. Rule of Appellate Procedure, Pa.R.A.P. 1571, authorizes this Court to rule on the record made before it or on the stipulation of facts made by the parties.

█ This Court is entitled to the broadest scope of review when considering the propriety of an order of the Board of Finance and Revenue, *Eastern Diversified Metals Corp. v. Commonwealth*, 6 Pa.Commonwealth Ct. 605, 297 A.2d 167 (1972), because, "[a]lthough this Court hears such cases in its appellate jurisdiction, 42 Pa.C.S. § 763, this Court functions essentially as a trial court." *PICPA Foundation for Education and Research v. Commonwealth*, 143 Pa.Commonwealth Ct. 291, 295 n. 6, 598 A.2d 1078, 1080 n. 6 (1991) (citations omitted). The stipulation of facts is binding and

6. Because we find that the disparate treatment of Norris by the Board justifies the abatement of the penalties against him, we need not address the last issue.

conclusive upon this Court, but we may draw our own legal conclusions from those facts. *See Suburban/Bustleton Pharmacy v. Department of Aging,* 134 Pa.Commonwealth Ct. 71, 579 A.2d 426 (1990).

■ Norris argues that the refusal to abate his penalties is a capricious and arbitrary action constituting an abuse of discretion by the agency. We recognize that the Supreme Court in *Slawek v. Board of Medical Education and Licensure,* 526 Pa. 316, 321, 586 A.2d 362, 365 (1991), cautioned this Court against inquiring too deeply whether a penalty is reasonable in light of the violation. That case, however, was an appeal from the Department of State subject to the limited scope of review in 2 Pa.C.S. § 704, and not from the Board of Finance and Revenue, and is thus distinguishable from the case at bar. Norris' appeal comes to us under Pa.R.A.P. 1571 and, as previously discussed, we function as a trial court. As a trial court, we do not review the Board's penalty, but are free to impose our own. With that in mind we turn to a consideration of the essential fairness of the penalty imposed on Norris.

■ In this case, the stipulated facts indicate that the Department assessed a penalty in February 1985 against Norris for being one day late in his transmission of writ taxes in the amount of $990.00, yet failed to assess a penalty against Cumberland County in 1985 when it was one day late in its transmission of combined taxes in the amount of $296,655. (Stipulation of Facts, Exhibit E). The Board refused to abate only three other penalties imposed by the Department from 1984 to 1988. And, as noted earlier, the Board abated two penalties assessed against the Traffic Court of Philadelphia in the amount of $167,431.00 and $105,500.00.[7] (Stipulation of Facts No. 24).

7. Nowhere in the record does the Board offer any explanation for its grossly disparate application of clemency. Its entire argument in rebuttal to the assertion of selective enforcement in its brief on appeal to this Court is the sum total of two, short, sentences. They bear repeating:

The only penalties not abated by the Board amounted to less than one thousand dollars, while Norris's penalties amount to over one million dollars. Considering that the maximum statutory fine imposed for a first degree felony conviction is only $25,000, 18 Pa.C.S. § 1101(1), the penalty assessed against Norris is clearly outrageous and excessive. Furthermore, because Norris paid the Commonwealth the monies it was owed as well as interest on those amounts, there has been no substantial injury to the Commonwealth or its citizens. We surmise that the total penalty imposed would actually far outweigh Norris' total earnings from his position. We conclude that Norris has established a case of disparate and arbitrary treatment by the Board.

■ Finally, we consider Norris' argument that the Board's penalty assessment and subsequent refusal to abate the penalties selective enforcement in light of the aforementioned routine abatement of other similar penalties. Our Superior Court stated that:

> In order to establish an allegation of discriminatory enforcement it is necessary to prove that such enforcement contains an element of intentional or purposeful discrimination.... Proof of mere laxity of enforcement by the authorities is not sufficient to establish an impermissible exercise of discrimination in the enforcement of the law.

*Kroger Co. v. O'Hara Township*, 243 Pa.Superior Ct. 479, 482, 366 A.2d 254, 256 (1976) (citations omitted). Norris maintains that the penalties are in retaliation for his refusal to join the Department's cash management program.

> Finally, that the majority of public officers assessed the 10% penalty found relief at the Board of Finance and Revenue does not mean that Mr. Norris should be given relief now. Each case is different and Mr. Norris is not the only one who did not receive relief from the Board. The record shows therefore:
> (a) total penalties in the amount of $328,467.92 were abated;
> (b) abatement of penalties in the total sum of $926.39 were denied;
> (c) penalties against Mr. Norris in the sum of $765,981.04 were not abated;
> (d) no explanation has ever been offered by the Board for the difference in treatment between those abated and those denied abatement.

We find that the Department was pressuring Norris to join the Department's cash management program. In 1986, Northumberland, Northern and York Counties were the only nonparticipants in the program. (Stipulation of Facts No. 26). After the assessment of penalties for the late transmission of the 1985 taxes against Norris as Recorder of Deeds of York County, Cumberland and Northumberland County joined the cash management program, leaving York County, by 1988, the only non-participant in the program.

Neither the Department nor the Board have offered any explanation of the unusually harsh treatment meted out to Norris alone. Where the Department and the Board treat an officer reporting to the Department in such a disparate manner, they must be required to offer some justification for that disparate treatment. The Department and Board may not use a discretionary statutory penalty as a cudgel to coerce those officers under their auspices to join a program they have created in the absence of any statutory duty of the officers to join the program. In light of the enormous and unusual penalties assessed against Norris and the lack of justification by the Department or Board, we conclude that the penalties were imposed in retaliation for Norris's refusal to join the Department's cash management program. Norris has, therefore, carried his burden of showing intentional discrimination.

Based on the foregoing discussion, we grant Norris's petitions, vacate the decision of the Board of Finance and Revenue, and abate in full, the penalties imposed against John C. Norris.

### ORDER

NOW, May 4, 1993, the orders of the Board of Finance and Revenue in the above-captioned matters are hereby reversed; the petitions of John C. Norris are granted and the penalties imposed against John C. Norris are abated in full.