**UNISYS CORPORATION, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent (Three Cases).**

Commonwealth Court of Pennsylvania.

Argued May 6, 1998.

Decided March 8, 1999.

As Amended March 12, 1999.

725 A.2d 1248 (Pa.Cmwlth.1999).

**2.** For resolution of the due process issue, *see Slater v. Pennsylvania Department of Education,*

Joseph C. Bright, Philadelphia, for petitioner.

Kevin A. Moury, Senior Deputy Atty. Gen., Harrisburg, for respondent.

Before COLINS, President Judge, DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

LEADBETTER, Judge.

Unisys Corporation petitions for review of three orders of the Board of Finance and Revenue (Board) which affirmed the Department of Revenue's (Department) settlement of Unisys' 1986 franchise tax and Sperry Corporation's[1] 1985 and 1986 franchise tax. The Pennsylvania franchise tax, which is imposed on the capital stock value of every out of state corporation that does business within Pennsylvania, is designed to tax business activity conducted within the Commonwealth only. Section 602(b) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7602(b). In calculating the franchise tax, the reporting corporation must first calculate its capital stock value ["actual value"] by a statutory formula based upon the corporation's net worth,[2] which includes the net worth of any entity in which the corporation owns common stock, and the corporation's average net income, which includes dividends received from

---

1. Unisys is the successor by merger to Sperry Corporation.

2. A corporation's net worth is calculated as follows:

(a) Net worth is the sum of the taxpayer's issued and outstanding capital stock, surplus and undivided profits as per books set forth on the income tax return filed by the taxpayer with the Federal government, or if no return is made, as would have been set forth had a return been made.

(b) In the case of a taxpayer which has investments in the common stock of another corporation, net worth is the consolidated net worth of the taxpayer computed in accordance with generally accepted accounting principles. Book value for investments of stock of other corporations includes original cost plus the investor's share of the investee's earnings or losses. For the purpose of this subsection, investments in the common stock of another corporation means investments which shall be accounted for using the equity method of accounting or which shall be consolidated under generally accepted accounting principles.

61 Pa.Code § 155.27(a) and (b).

investee corporations.[3] Section 601(a) of the Tax Code, 72 P.S. § 7601(a); 61 Pa.Code §§ 155.26, 155.27. After determining the capital stock value, the corporation must arrive at taxable value, 72 P.S. § 7602(b), by applying an apportionment factor to the actual value.

Since a state may not constitutionally tax value earned outside its borders, the Tax Code sets forth two methods by which a corporation may apportion the value of its capital stock attributable to business activities within and without the Commonwealth, namely, the single-factor method[4] and the three-factor method. The choice of method is left to the taxpayer.[5]

The three-factor apportionment formula averages three fractions—property, payroll and sales—to determine the taxable portion of a foreign corporation's capital stock value:

$$\frac{\text{Property in PA}}{\text{Property everywhere}} + \frac{\text{Payroll in PA}}{\text{Payroll everywhere}} + \frac{\text{Sales in PA}}{\text{Sales everywhere}} \div 3 = \text{Apportionment factor}$$

$$(\text{Actual value}) \times (\text{Apportionment factor}) \times (10 \text{ mills}) = \text{Tax due}$$

72 P.S. § 7602(b)(1). As consistently interpreted and applied by the Department, the property, payroll and sales figures that comprise the three fractions represent only the property, payroll and sales of the taxpayer itself, and not of the taxpayer's subsidiaries. Thus, under this method, while the net worth of and dividends paid by certain subsidiaries of a corporation are included in the corporation's actual value, the property, payroll and sales of those subsidiaries are not considered in the apportionment formula.

■ Unisys, a Delaware corporation with its principal office in Blue Bell, Pennsylvania, does business in all states of the United States. During the tax years at issue, Unisys owned, directly or indirectly, the stock of more than 100 domestic and foreign subsidiaries doing business in more than 100 countries around the world. In the franchise tax

3. Specifically, actual value for tax years 1985 and 1986 is computed pursuant to the following algebraic formula:
   (.5 x (average net income / .095 + (.75)(net worth)))—$100,000

Section 601(a) of the Tax Code, 72 P.S. § 7601(a).

4. The single-factor method, also known as the single-fraction method, is not applicable here. Under the single-factor method, the tax due is calculated by use of the following formula:

$$\frac{\text{Total assets minus exempt assets}}{\text{Total assets}} \times (\text{Actual value}) \times (10 \text{ mills}) = \text{Tax due}$$

Exempt assets include real and tangible personal property located outside Pennsylvania and certain intangible assets. Act of April 20, 1927, P.L. 311, § 1, *as amended*, 72 P.S. § 1894; Act of June 22, 1931, P.L. 685, § 1, *as amended*, 72 P.S. § 1896; 61 Pa.Code § 155.10.

5. Under the original statutory scheme, the single-factor formula applied only to the capital stock tax on domestic corporations and the three-factor formula applied only to the franchise tax on foreign corporations. By amendment in 1967, domestic corporations were given the option to calculate their taxes by the franchise tax formula. Then, in *Gilbert Associates, Inc. v. Commonwealth*, 498 Pa. 514, 447 A.2d 944 (1982), our supreme court held that foreign corporations, like domestic corporations, must be afforded the option of utilizing either the three-factor or the single-fraction method.

The Department makes the argument that the right to elect the single-factor formula ameliorates any alleged deficiency in the three-factor formula, making relief unnecessary. However,

the cases cited for this proposition, *Commonwealth v. After Six, Inc.*, 489 Pa. 69, 413 A.2d 1017 (1980) and *Quality Markets, Inc. v. Commonwealth*, 99 Pa.Cmwlth. 537, 514 A.2d 228 (1986), *aff'd per curiam*, 514 Pa. 586, 526 A.2d 357 (1987), presuppose the existence of at least one valid formula. These cases hold that when a taxpayer abjures the formula designed for it and voluntarily elects the other, it may not complain that the formula it chose is unconstitutional as applied. However, in *Quality Markets*, we made clear that the single-factor formula would be unconstitutional if *involuntarily* applied to out of state corporations like Unisys. We agree with Unisys that the right to choose between two infirm formulas would not cure the deficiency in either.

returns at issue, Unisys reported its average net income on a separate company, unconsolidated basis and did not include as income dividends it received from subsidiaries or other investee corporations. Unisys likewise reported its net worth on a separate company, unconsolidated basis and elected to apportion its capital stock value using the three-factor formula, rather than the single-factor asset apportionment fraction. In settling Unisys' franchise tax for the applicable years, the Department increased the amount reported by Unisys as net worth to include the value of Unisys' investments in its subsidiaries and increased the amount reported as average net income by adding the amount of dividends paid to Unisys by its subsidiaries and investee corporations. The Department calculated Unisys' property, payroll and sales apportionment factors on a separate company basis, that is, the factors included only the property, payroll and sales of Unisys itself and not the property, payroll and sales of its subsidiaries. Unisys appealed the Department's settlements, requesting refunds. The Board affirmed the Department's settlements and denied Unisys' refund requests. This appeal followed.[6] The question presented is whether the interstate commerce and due process clauses of the United States Constitution require the Commonwealth to include property, payroll and sales of subsidiaries in the three-factor apportionment formula and, if not, whether the Pennsylvania statutory scheme mandates administrative relief.[7]

■ The commerce clause prohibits a state from taxing value earned outside its borders. Where the value attributable to a particular location is not capable of precise definition, the state's method of determining its share of total value is tested by the requirements of due process. Thus, although the requirements of the commerce clause and due process are distinct—the former imposing a substantive limitation upon the state's

power to tax and the latter regulating the procedures by which the states may comply with that substantive law—they are closely interrelated. As a practical matter, if the method used to apportion total income between in state (taxable) and out of state (nontaxable) components is fair, the substantive requirements of the commerce clause will ordinarily be met. Hence, most cases analyze these separate constitutional requirements jointly, focusing primarily on the due process issue. As the court noted in *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), the interstate commerce clause "has not in practice required much in addition to the requirement of fair apportionment." *Id.* at 171, 103 S.Ct. 2933.

■ In the case of a multi-state or multinational company, the Supreme Court has noted that "arriving at precise territorial allocations of value is often an elusive goal." *Id.* at 164, 103 S.Ct. 2933. As a result, states must often resort to the use of formulas based upon more readily ascertainable measures of the corporation's activities within and without the state in order to apportion the taxes. The rationale which provides the constitutional predicate for such apportionment is the notion of the "unitary business enterprise," i.e., an enterprise which carries out distinct multijurisdictional activities resulting in ultimate profit or value derived from the entire business operation. As the court noted in *Container*:

> The unitary business formula apportionment method rejects geographical or transactional accounting, and instead calculates the local tax base by first defining the scope of the "unitary business" of which the taxed enterprise's activities in the taxing jurisdiction form one ... party, and then apportioning the total income of that "unitary business" between the taxing

6. In appeals from decisions of the Board of Finance and Revenue, we have the broadest scope of review because the Commonwealth Court functions as a trial court, even though such cases are heard in our appellate jurisdiction. *Norris v. Commonwealth*, 155 Pa.Cmwlth. 423, 625 A.2d 179, 182 (1993).

7. Unisys also states in passing that the three-factor apportionment formula, as applied to it, violates the Due Process and Uniformity Clauses of the Pennsylvania Constitution, as well as Sections 401 and 601 of the Tax Code, 72 P.S. §§ 7401 and 7601. We find these claims devoid of merit.

jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction.

*Id.* at 165, 103 S.Ct. 2933. Further, "[t]he functional meaning of [the unitary business enterprise] requirement is that there be some sharing or exchange of value not capable of precise identification or measurement ... which renders formula apportionment a reasonable method of taxation." *Id.* at 166, 103 S.Ct. 2933. In *Mobil Oil Corp. v. Commissioner of Taxes of Vermont*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), the court made clear that this is a functional concept which disregards corporate formalities:

So long as dividends from subsidiaries and affiliates reflect profits derived from a functionally integrated enterprise, those dividends are income to the parent earned in a unitary business.

*Id.* at 440, 100 S.Ct. 1223.

█ In addition to the requirement that the business must be a unitary enterprise before its total profit or value is subject to tax based upon an apportionment formula, the due process clause also requires that any such formula be fair. Initially, we note that the Supreme Court has repeatedly upheld the constitutionality of the three-factor apportionment formula. "Indeed," the court noted in *Container*, "not only has the three-factor formula met our approval, but it has become ... something of a benchmark against which other apportionment formulas are judged." 463 U.S. at 170, 103 S.Ct. 2933. Unisys' challenge, however, lies not with the formula itself, but with the Department's use in the formula of payroll, property, and sales data of only the parent corporation. The essence of Unisys' argument on appeal is that it is fundamentally unfair for the Department to include as income the dividends Unisys received from its subsidiaries and as net worth the value of its investments in the subsidiaries when calculating the actual value of the corporation, but not include its subsid-

iaries' property, payroll and sales in the apportionment formula.

Since the purpose of the formula is to apportion the value of the unitary business enterprise among different jurisdictions, it can hardly be subject to dispute that an apportionment formula which includes data from the entire enterprise will yield a more accurate result than a formula based solely upon the parent corporation's operations. That is not the question before this court, however, but rather whether this approach is constitutionally mandated. Although never addressed by the full court,[8] an affirmative answer was urged by Justice Stevens in his dissent in *Mobil Oil Corp.*:

Either Mobil's worldwide "petroleum enterprise," ... is all part of one unitary business, or it is not; if it is, Vermont must evaluate the entire enterprise in a consistent manner. As it is, it has indefensibly used its apportionment methodology artificially to multiply its share of Mobil's 1970 taxable income.

445 U.S. at 449, 100 S.Ct. 1223. The gist of the issue presented—whether the data used to determine the total apportionable business value subject to tax and the apportionment factors must be drawn from the same universe—has been addressed, however, by several state courts. These courts have reached different results based upon their analyses of the varying tax structures and business enterprises under review, but they have consistently eschewed the sort of per se or "bright line" test urged by Unisys in favor of the traditional due process analysis. *See, e.g., NCR Corp. v. Commissioner of Revenue*, 438 N.W.2d 86 (Minn.1989), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989); *E.I. DuPont deNemours & Co. v. State Tax Assessor*, 675 A.2d 82, 88–91 (Me.1996); *American Tel. and Tel. Co. v. Department of Revenue*, 143 Wis.2d 533, 422 N.W.2d 629, 636–37 (App.1988).

█ In analyzing whether an apportionment formula complies with due process, the United States Supreme Court has developed a two-part test. The first prong of this test

---

**8.** The court in *Mobil* found that the appellant had "disclaimed any dispute with the accuracy or fairness of Vermont's apportionment formula,"

445 U.S. at 434, 100 S.Ct. 1223, and thus did not address the issue raised sua sponte by Justice Stevens.

(sometimes referred to as "internal consistency") seeks to determine whether, *on its face*, the formula is reasonably calculated to reach only the profits earned within the state, i.e., is not inherently arbitrary. This standard will be met where the formula, "if applied by every jurisdiction ... would result in no more than all of the unitary business' income being taxed." *Container*, 463 U.S. at 169, 103 S.Ct. 2933. If this test is met, the formula will be disturbed only "when the taxpayer has proved by 'clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportions to the business transacted ... in that State' or has 'led to a grossly distorted result.'" *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 274, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), *quoting Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell*, 283 U.S. 123, 135, 51 S.Ct. 385, 75 L.Ed. 879 (1931) and *Norfolk & W. Ry. Co. v. Missouri State Tax Comm'n*, 390 U.S. 317, 326, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968) [citations omitted]. This latter standard, which looks to the practical effect of the formula, is sometimes characterized as "external consistency." It is upon the external consistency test that Unisys bases this appeal.[9] We conclude that Unisys has not met its burden under the standard set forth above.

In *Hans Rees' Sons*, a taxpayer corporation challenged the constitutionality of North Carolina's corporate income tax apportionment method, the single-factor method.[10] The foreign corporation demonstrated that, while approximately 80% of the taxpayer's income was allocated to North Carolina under the single-factor method, less than 22% of the corporation's income actually had its source in the corporation's operations within North Carolina. 283 U.S. at 134, 51 S.Ct. 385. As a result, the taxes assessed pursuant to the formula were more than three times that which was factually justified. Un-

der these circumstances, the Court held unconstitutional the application of the single-factor apportionment method to the corporation there, stating that:

> [T]he statutory method, as applied to the appellant's business for the years in question operated unreasonably and arbitrarily, in attributing to North Carolina a percentage of income out of all appropriate proportion to the business transacted by the appellant in that State. In this view, the taxes as laid were beyond the State's authority.

*Id.* at 135–36, 51 S.Ct. 385. Thus, a more than 250% difference between an assessment calculated under a state's apportionment formula and the amount of income actually attributable to a corporation's operations carried on within a state is outside the allowable margin of error, and therefore offends due process.

Similarly, the court, in *Norfolk & Western Railway*, held that the state of Missouri violated due process in its rigid application of a corporate tax on the value of railroad rolling stock. Because of the mobility of rolling stock, the tax was calculated by multiplying the fraction derived from comparing the number of miles of track in Missouri to the total number of miles of track in all states by the total value of all the company's rolling stock. The Railway produced evidence of the actual value of its rolling stock usually employed both within and outside Missouri. This evidence showed that while the percentage of the company's *track* located in Missouri was over 8%, the actual value of the company's *rolling stock* located within the state was only approximately 3%.[11] The Railway argued that calculating the tax based on the amount of track grossly distorted the measurement of the value of the business carried on within Missouri. The court agreed, stating:

---

**9.** Unisys makes a passing argument that the tax is internally inconsistent based upon the decision in *Tambrands, Inc. v. State Tax Assessor*, 595 A.2d 1039 (Me.1991). However, as Unisys concedes, *Tambrands* has been overruled. *E.I. DuPont deNemours & Co.*, 675 A.2d at 88–89. For the same reasons *Tambrands* was criticized and ultimately abandoned, we reject Unisys' arguments in this regard.

**10.** North Carolina's single-factor method was based entirely on ownership of tangible property.

**11.** 2.71% measured by number of units, and 3.16% measured by cost less depreciation value. 390 U.S. at 327, 88 S.Ct. 995.

Our decisions recognize the practical difficulties involved and do not require any close correspondence between the result of computations using the mileage formula and the value of property actually located in the State, but our cases certainly forbid an unexplained discrepancy as gross as that in this case. Such discrepancy certainly means that the impact of the state tax is not confined to intrastate property even within the broad tolerance permitted.

390 U.S. at 327, 88 S.Ct. 995. Thus, a 266% difference in tax due under a state's apportionment formula and under a formula using actual values is also outside the permissible margin of error.

In contrast, the court in *Container Corp.* concluded that a 14% difference between the application of the three-factor apportionment formula and an alternative formula proposed by the corporation was not sufficient to prove that the state of California was taxing extraterritorial value.[12] The court noted:

Of course, even the three-factor formula is necessarily imperfect. But we have seen no evidence demonstrating that the margin of error (systematic or not) inherent in the three-factor formula is greater than the margin of error (systematic or not) inherent in the sort of separate accounting urged upon us by appellant. Indeed, it would be difficult to come to such a conclusion on the basis of figures in this case: for all of appellant's statistics showing allegedly enormous distortions caused by the three-factor formula, the tables ... reveal that the percentage increase ... comes to approximately 14%, a far cry from the more than 250% difference which led us to strike down the state tax in Hans Rees' Sons, Inc., and a figure certainly within the substantial margin of error inherent in any method of attributing income among the components of a unitary business.

463 U.S. at 183–84, 103 S.Ct. 2933.

Similarly, in *Moorman,* the Supreme Court concluded that Iowa's single-factor apportionment formula was constitutionally applied where the taxpayer showed a 48% difference between the amount assessed by the state under the single-factor method and the amount of tax that would have been due were taxpayer permitted to utilize the three-factor formula. The Court noted that the taxpayer failed to show that the single-factor method produced a grossly unfair result. 437 U.S. at 275, 98 S.Ct. 2340. Thus, while not explicitly so stating, the Supreme Court has held that a 48% disparity is within the permissible margin of error.

■ Applying the principles of these cases, we conclude that Unisys has not demonstrated a due process violation. Unisys can claim only that were the total property, payroll and sales of the unitary business enterprise included in the fractions of the three-factor formula, its tax due would be approximately 44.5% less than the figure arrived at by the Board in its calculation under the three-factor formula set forth in the Tax Code. We do not believe that a 44.5% disparity between calculations lies outside of the constitutional margin of error delineated by the Supreme Court. A 44.5% disparity is not even remotely close to the 266% and 300% disparities cited by the Court as unconstitutional in *Norfolk & Western Railway* and *Hans Rees' Sons,* and is somewhat less than the variance upheld in *Moorman.*

Alternatively, Unisys argues that it is entitled to statutory equitable relief under the special apportionment provision set forth in Section 401(3)2.(a)(18) of the Tax Code, 72 P.S. § 7401(3)2.(a)(18) [Subsection (18) ],[13] which provides:

(18) If the allocation and apportionment provisions of this definition do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition the Secretary of Revenue or the Secretary may require, in respect to all

12. Container Corporation argued that application of the three-factor formula to its business was unconstitutional because its foreign subsidiaries were significantly more profitable than it was and the formula's reliance on indirect measures of income (payroll, property and sales) systematically distorted the true allocation of income between Container and its subsidiaries. 463 U.S. at 181, 103 S.Ct. 2933.

13. Subsection (18) is made applicable to the franchise tax by 72 P.S. § 7602(b)(1).

or any part of the taxpayer's business activity:

(A) Separate accounting;

(B) The exclusion of any one or more of the factors;

(C) The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this State; or

(D) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income. In determining the fairness of any allocation or apportionment, the Secretary of Revenue may give consideration to the taxpayer's previous reporting and its consistency with the requested relief.

■ The Department claims that Subsection (18) is not applicable to Unisys' situation because it "is only to be used in quirky, nonrecurring situations, and to avoid constitutional infractions. . . ." (Brief at 23.) We disagree. First, we see nothing in the language of the statute to suggest that it is reserved for "quirky" situations. Moreover, it would make little sense for the legislature to allow correction of isolated inaccuracies, but prohibit administrative adjustment where, because of its structure, a company was overtaxed (or undertaxed) year after year. We will not assume that the legislature intended such an absurd result.

Next, while Subsection (18) certainly does provide a mechanism whereby the Department can obviate the need for court challenges in those situations rising to the level of due process violations, use of the language "do not *fairly represent* the extent of the taxpayer's business activity in the state" plainly implicates the power to address a broader range of error than merely that which may be characterized as "grossly disproportionate." It gives the Department broad discretion to make appropriate adjustments where any substantial inaccuracy results from application of the allocation and apportionment provisions.

Having determined that Subsection (18) is applicable, we must next consider whether the Department has abused its discretion in refusing to make an adjustment in this case.

In support of its claim that adjustment is inappropriate, the Department states that, "Presumably, taxpayer's intangible assets are . . . managed and controlled at its corporate headquarters [in Pennsylvania]. If taxpayer were to sell one of its subsidiaries and realize nonbusiness income for corporate net income tax purposes, the gain would be entirely allocable (and therefore totally taxable in) the Commonwealth." (Brief at 24.) The Department's point in this regard is somewhat obscure, to say the least. If it intends to say that the Commonwealth has a closer connection with Unisys' out of state subsidiaries than with those of a foreign corporation headquartered out of state, such an argument would appear more pertinent to Unisys' initial claim that it should *exclude* such holdings from the total capital stock value subject to tax than to the claim that it should *include* those subsidiaries' values in the apportionment formula. Moreover, this argument would seem inconsistent with the fundamental concepts underlying the unitary business enterprise theory.

■ Next, the Department argues that, "One has to wonder how unfair an apportionment provision can be to the taxpayer when over a 13 year period, the apportionment provisions average well under 10%." (Brief at 24.) This argument entirely misses the point. It matters not whether the formula allocates a large or a small share of the business to the Commonwealth, but how far that allocation varies from the actual share. For instance, in *Norfolk & Western Railway,* a due process violation was found where the allocated and actual shares were 8% and 3% respectively. Here, although the allocated share may have averaged less than 10%, the discrepancy between the allocated and actual shares was nearly 45%. Even giving due deference to the Department's interpretation of the statute, we simply cannot say that an allocation so far at variance "fairly represents the extent of [Unisys'] business activity in this State." Accordingly, we hold that the Department abused its discretion in refusing to adjust Unisys' allocation share under Subsection (18). We emphasize that we do not hold, as the Department argues, that Subsec-

tion (18) relief is required "in all franchise tax cases in which the taxpayer owns subsidiaries." (Brief at 23.) Each case must be decided on its own merits, subject to the Department's sound discretion. We simply hold that a variance of this magnitude, although not of constitutional proportions, requires statutory relief.

Nor do we hold that the particular remedy sought by Unisys—inclusion of the subsidiaries' data in the three factor formula—is mandated, although that would appear to be a sensible approach, and one that would serve the interests of accuracy promoted by Subsection (18). The statute gives broad discretion to the Department to use any method which will produce a fair and equitable result, and we will not here limit the method the Department must use. We hold only that some form of Subsection (18) relief must be accorded.

We reverse the orders of the Board, and remand for further proceedings consistent with this opinion.

### ORDER

AND NOW, this 8th day of March, 1999, the orders of the Board of Finance and Revenue in the above captioned matters are hereby reversed. The Chief Clerk is directed to remand this case to the Department of Revenue for further proceedings consistent with this opinion unless exceptions are filed within 30 days in conformity with Pa. R.A.P. 1571(i).

Judge DOYLE dissents.

Dissenting opinion by Judge PELLEGRINI.

PELLEGRINI, Judge, dissenting.

While I agree with that portion of the majority's decision concluding that the apportionment formula used by the Department of Finance and Revenue (Department) to calculate Unisys Corporations' (Unisys)

franchise taxes complied with due process, I dissent from that portion of the majority's opinion that the disparity between the calculations of Unisys' allocated and actual shares was sufficient reason to require the Department to afford Unisys equitable relief under Section 401(3)2.(a)(18) of the Tax Reform Code of 1971 [1] (referred to herein as Subsection 18). I disagree because I believe that Subsection 18 only requires equitable relief where the disparity is unconstitutional, not where the disparity is something less than unconstitutional, i.e., unfair. To hold otherwise would place us at variance with other states that have adopted an identical provision. Also, no court has found that a 45% disparity is anywhere near the range of disparity previously held to require equitable relief.

This case involves the Pennsylvania franchise tax that is imposed on the capital stock value of every out-of-state corporation doing business in Pennsylvania. In order to come up with the appropriate tax for that portion of a corporation's business activity conducted only in Pennsylvania, there are two methods that may be used to apportion the value of its capital stock – the single-factor method and the three-factor method.[2] Because the choice of method is left up to the taxpayer, Unisys utilized the three-factor apportionment formula (averaging fractions of property, payroll and sales) to determine the taxable portion of its foreign corporations' corporate stock value for the tax years 1984–1994. In doing so, it included in its calculations the property, payroll and sales figures from its subsidiaries but only those figures from its parent corporation.

In settling Unisys' franchise tax for the years in question, the Department increased the net worth and average net income reported by Unisys by including the net worth of its subsidiaries and adding the dividends of its subsidiaries which resulted in a higher franchise tax.[3] Unisys appealed the Depart-

---

1. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7401(3)2.(a)(18).

2. *See* majority opinion at page 1099, note 4 and page 1099 for the formulas used in each of those methods.

3. Pursuant to Subsection 18, the Department has the authority to adjust the taxpayer's accounting

when it does not fairly represent the extent of the taxpayer's business in Pennsylvania. Additionally, we note that pursuant to Sections 401(3)2.(a)(10), (13), and (15) of the Tax Code, 72 P.S. §§ 7401(3)2.(a)(10), (13), and (15), when

ment's settlements, which were denied and this appeal followed. On appeal, the majority disagrees with Unisys' contention that the Department's exclusion of its subsidiaries' property, payroll and sales figures in calculating the franchise tax violated the commerce clause and due process clause of the United States Constitution. The majority states that if the method used to apportion the total income between taxable in-state and non-taxable out-of-state components is fair, due process will be met. Further, because the purpose of the formula is to apportion the value of the entire business enterprise among different jurisdictions, the majority concludes, "it can hardly be subject to dispute that an apportionment formula which includes data from the entire enterprise will yield a more accurate result than a formula based solely upon the parent corporation's operations." (Maj. op. at p. 1101.) The majority then continues to explain that an apportionment formula complies with due process when, on its face, it is reasonably calculated to reach only the profits earned within the state and is not inherently arbitrary, and the income attributed to the State is not out of all appropriate proportions to the business transacted, i.e., not grossly distorted.

However, the majority goes on to determine that Subsection 18 applies even if the disparity is constitutional, and that Unisys is entitled to equitable relief from the Department because of the magnitude of the 45% disparity.[4] I disagree with the majority that a 45% variance is of such a magnitude that it requires equitable relief from the Department because that same figure cannot be found to be within the range of constitutionality and, therefore, a fair determination of the taxes owed and, at the same time, be "unfair" and of such a magnitude of disparity that it also requires equitable relief.

The plain language of Subsection 18 shows that it was meant to provide equitable relief only when the disparity was palpably so great that it would violate due process. Subsection 18 provides:

(18) *If the allocation and apportionment provisions of this definition do not fairly represent the extent of the taxpayer's business activity in this State,* the taxpayer may petition the Secretary of Revenue or the Secretary of Revenue may require, in respect to all or any part of the taxpayer's business activity:

(A) Separate accounting;

(B) The exclusion of one or more of the factors;

(C) The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this State; or

(D) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

72 P.S. § 7401(3)2.(a)(18) (Emphasis added.)

"Fairness" is a constitutional term.[5] It means that either a taxpayer did not receive proper procedural protection or the statute did not treat it similarly to other taxpayers. *Commonwealth v. Mercadante,* 676 A.2d 1309 (Pa.Cmwlth.1996); *Triumph Hosiery Mills, Inc. v. Commonwealth,* 21 Pa.Cmwlth. 186, 343 A.2d 710 (1975), *aff'd,* 469 Pa. 92, 364 A.2d 919 (1976), *appeal dismissed,* 429 U.S. 1083, 97 S.Ct. 1090, 51 L.Ed.2d 530 (1977). Subsection 18 addresses the situation where the tax, *as applied,* leads to an unconstitutional result but that litigation can be avoided by allowing administrative officials to modify the tax as applied to bring it within constitutional norms. It does not mean that a taxpayer can claim administrative relief for unfairness that does not rise to the level of unconstitutionality; otherwise, such a claim

---

calculating the denominator of the property, payroll and sales factors, the taxpayer must include the property, payroll and sales of the taxpayer *everywhere* during the tax period.

**4.** The majority apparently agrees with Unisys' statement: "If the distortion is not cured by constitutional relief, it should be cured by statute." (Unisys' brief at p. 24.)

**5.** I do not see how we can apply anything other than the constitutional standard because otherwise Subsection 18 would be void for vagueness. No one would dispute that a statute that provides "a fair tax will be imposed" would be struck down as unconstitutional. Similarly, if the majority view prevails, Subsection 18 should be struck down because what "fairly represents" is similarly vague and standardless.

becomes similar to the plea that all parents hear from their children when they have to do something they do not want to do and they complain, "it's not fair."

The language in Subsection 18 was adopted from and is identical to Section 18 of The Uniform Division of Income for State Tax Purposes Act that was approved in 1957 by the National Conference of Commissioners on Uniform State Laws and the House of Delegates of the American Bar Association. That Act deals with the allocation and apportionment of income of business in multiple jurisdictions and is designed for those states that have taxes measured by net income. Those states that have also adopted Section 18 and have provisions identical to Subsection 18 do not interpret "unfairness" to be anything less than unfair constitutionally. *See, e.g., Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Capitol Industries–EMI, Inc. v. Bennett,* 681 F.2d 1107 (9th Cir.1982); *Atlantic Richfield Co. v. State,* 705 P.2d 418 (Alaska 1985); *Colgate–Palmolive Co. v. Franchise Tax Bd.,* 10 Cal. App. 4th 1768, 13 Cal.Rptr.2d 761 (Cal.Ct. App.1992); *Miami Corporation v. The Department of Revenue,* 212 Ill.App.3d 702, 156 Ill.Dec. 820, 571 N.E.2d 800 (Ill.App.Ct.1991); *Liquid Transporters, Inc. v. Revenue Cabinet, Commonwealth of Kentucky,* 721 S.W.2d 722 (Ky.Ct.App.1986); *E.I. Du Pont de Nemours & Co. v. State Tax Assessor,* 675 A.2d 82 (Me.1996); *Lee v. Department of Revenue,* ——— Or. Tax. ———, 1998 WL 283143 (Or. T.C.1998). While many taxpayers believe that the taxes they pay are "unfair," as long as they are constitutional and calculated in accordance with a statute, they must be paid. To allow a generalized claim of unfairness would lead to a standardless system where tax relief could be granted for non-salutorious reasons.

Not only do I disagree with the majority that Unisys' increased franchise tax is unfair, I do not believe that the 45% disparity is "unfair" under any definition of that term. Unisys created the disparity in this case by choosing to use the three-factor method instead of the single-factor method. Under the single-factor method, all of the property owned by Unisys, both tangible and intangible, would have been valued and used in place of the property, payroll and sales fractions in the three-factor method to calculate its taxes. Taxpayers that own the majority of the voting stock of another corporation, e.g., a subsidiary, are entitled to exclude or exempt the value of that corporation from the numerator of the single-factor fraction. *See* Act of April 20, 1927, P.L. 311, *as amended,* by the Act of June 22, 1931, P.L. 687, 72 P.S. § 1894. If Unisys had elected to use the single-factor method of apportionment, most of its subsidiaries would have been excluded from the calculation of the franchise tax and its tax would have been considerably lower. However, it chose not to use that method and cannot now complain that the higher tax based on the three-factor formula entitles it to equitable relief.

Finally, ignoring that Unisys chose its method of calculation, it has offered no reason as to how the tax, as applied to it, is "unfair" other than saying if the tax was calculated its way, it would be less and as a result, the tax as imposed is unfair. Unisys must provide something more than that to establish "unfairness" other than saying it is no matter what the standard is that someone comes up with to interpret Subsection 18. Moreover, the only time a court has found that a disparity required equitable relief was where the number was so egregious. *See e.g., Hans Rees' Sons v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931) (court held there was a violation of due process where foreign corporation was assessed 80% of its income while less than 22% of its income was actually related to its operations in that state, resulting in a disparity of 250% in the amount of taxes assessed and the amount due). *See also Norfolk & Western Railway v. Missouri State Tax Commission,* 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968) (court held that gross disparity exceeded constitutional limits where foreign corporation was found to have 8% of its rolling stock located in Missouri, while in actuality there was only 3% located there, resulting in an approximate

166% disparity).[6]

In order for Subsection 18 to apply, there must be an unfair and unconstitutional allocation and apportionment of the foreign corporation's income that does not fairly represent its actual business activity in the State. No case has held that anywhere near a 45% disparity warrants equitable relief because the disparity is far less than in any case where equitable relief was granted. Accordingly, I would hold that Unisys' 45% disparity was not unfair because it fairly represents its business activity in this State and affirm the Department's decision.

6. We note that the majority relies on *Norfolk & Western Railway* to show that a constitutional violation was found where the allocated and actual shares were 8% and 3% respectively, and because the discrepancy between the allocated and actual shares in this case of 45% was much greater, Unisys requires relief. However, the majority misapplies the calculations from *Norfolk & Western Railway* because the actual disparity in that case was approximately 166%. Compared to the 166% disparity in *Norfolk & Western Railway*, the 45% disparity in this case is almost *de minimis*.