dance with the foregoing opinion. We will retain jurisdiction until this is accomplished.

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Salvatore A. MERCADANTE.**

Commonwealth Court of Pennsylvania.

Argued April 19, 1996.

Decided May 24, 1996.

Jack R. Heneks, Jr., Uniontown, for Appellant.

Jeffrey S. Golembiewski, Canonsburg, and Mark A. Esposito, Hartford, for Appellee.

Before SMITH and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Commonwealth of Pennsylvania (Commonwealth) appeals a Fayette County Court of Common Pleas order granting Salvatore Mercadante's motion in arrest of judgment.

Mercadante owns Merc's Restaurant in the City of Uniontown (City). He was prosecuted and found guilty of violating what is known as City Ordinance 395 (Ordinance) by failing to file gross receipt tax returns. The codified Ordinance provides in relevant part:

395.04 RATES OF TAXATION

Every person engaging in any of the following occupations or businesses in the City shall pay a gross receipts tax for the fiscal year of 1969 at the rate set forth:

(a) Wholesale vendors or dealers in goods, wares and merchandise—at the rate of one mill on each dollar of the volume of gross receipts of the business transacted by him.

(b) Retail vendors or dealers in goods, wares and merchandise, all persons engaged in conducting restaurants or other places where food, drink or refreshments are sold, and all persons conducting places of amusement—at the rate of one and one-half mills on each dollar of the volume of the gross receipts of the business transacted by him.

(c) Wholesale and retail vendors and dealers in goods, wares and merchandise—at the rate of one mill on each dollar of the volume of the gross receipts of the wholesale business transacted by him, and one and one-half mills on each dollar of the volume of the gross receipts of the retail business transacted by him. (Ord. 1124 Sec 4. Passed 11–29–68).

The trial court subsequently arrested judgment, concluding that the Ordinance is unconstitutional.[1] Specifically, the court held that, because the Ordinance taxes businesses selling goods, as well as restaurants and amusements, and not businesses providing services,[2] it violates the uniformity clause of

---

1. The trial court did not need to reach Mercadante's constitutional claim pertaining to the enforcement of the Ordinance.

2. The Ordinance does apparently tax at least one service business in taxing "places of amusement."

the Pennsylvania Constitution [3] and the equal protection clause of the fourteenth amendment to the United States Constitution.[4] The Commonwealth now appeals to this Court.

■ The sole issue in this case is whether the gross receipts tax of the City Ordinance employs an unconstitutional classification in taxing only restaurants, amusements and businesses selling goods, while not taxing other businesses.

The Commonwealth argues that political subdivisions have wide discretion in this area, and the longstanding Ordinance taxing the gross receipts only of vendors of goods, merchandise and wares, purveyors of food and operators of amusement centers, while not taxing members of the service industry, represents a legitimate and reasonable distinction based on real world business differences. The Commonwealth maintains that Mercadante did not sustain his heavy burden of proving the distinction is arbitrary or clearly, palpably and plainly unconstitutional. It cites the following cases in asserting that courts have consistently upheld the distinction. *Leonard v. Thornburgh,* 507 Pa. 317, 489 A.2d 1349 (1985); *F.J. Busse Co. v. Pittsburgh,* 443 Pa. 349, 279 A.2d 14 (1971); *Knisely v. Cotterel,* 196 Pa. 614, 46 A. 861 (1900); *Equitable Life Assurance Society v. Murphy,* 153 Pa.Cmwlth. 338, 621 A.2d 1078 (1993); *D/K Beauty Supply, Inc. v. North Huntingdon Township,* 67 Pa.Cmwlth. 163, 446 A.2d 986 (1982); *Hanover Borough Professional Association v. Hanover Borough,* 43 Pa.Cmwlth. 47, 401 A.2d 856 (1979).

Mercadante responds that any purported difference is irrational and feigned, since he showed the trial court that purveyors of goods and providers of services between them impose no more and no less of a charge on the City's general fund. He argues that, despite the equality of benefits and uses of the taxes among vendors and service providers, the tax burdens on those two groups are far from equal. He claims that not one witness called before the trial court could even guess as to any rational basis for the

tax classification. In sum, he contends that the tax is arbitrary and does not approach substantial equality of tax burdens imposed. *See Walters v. St. Louis,* 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954); *Mandl v. Commonwealth of Pennsylvania,* 161 Pa. Cmwlth. 481, 637 A.2d 703 (1994), *aff'd,* 539 Pa. 277, 652 A.2d 297 (1995); *Keystone Sanitation Co. v. Union Township,* 104 Pa. Cmwlth. 521, 522 A.2d 691 (1987).

■ The well established law that guides us in resolving this appeal has been set forth by the Pennsylvania Supreme Court as follows

[A]llegations of violations of the equal protection clause, and of the Uniformity Clause, are to be analyzed in the same manner....

The legislature possesses wide discretion in matters of taxation....The burden is upon the taxpayer to demonstrate that a classification, made for purposes of taxation, is unreasonable.... "[T]he challengers of the constitutionality of state or local taxation bear a heavy burden"....Indeed, tax legislation will not be declared unconstitutional unless it "*clearly, palpably, and plainly* violates the Constitution'"....

Under the equal protection clause, and under the Uniformity Clause, absolute equality and perfect uniformity in taxation are not required....In cases where the validity of a classification for tax purposes is challenged, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and "'reasonable and just'" basis for the difference in treatment....Stated alternatively, the focus of judicial review is upon whether there can be discerned "some concrete justification" for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens.

*Leonard* at 320–321, 489 A.2d at 1351–1352 (citations omitted) (emphasis in original); *see also Adams Outdoor Advertising, Ltd. v. Borough of Stroudsburg,* 667 A.2d 21 (Pa.

---

3. The uniformity clause states "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax ..." PA. CONST. art VIII, § 1.

4. U.S. CONST. amend. XIV, § 1.

Cmwlth.1995). We add to these statements that those contending a tax is unconstitutional are as a matter of practicality required to prove a negative, in that they must establish that no legitimate or reasonable distinctions based on real world business differences exist.

We now examine what Mercadante proved in this case. There is no dispute that, approximately, only 237 of 800 businesses in the City are taxed. The Commonwealth does not explain any relevant real world differences justifying this imbalance, other than mentioning the bare fact that goods are different from services. No rational basis for the distinction has even been suggested. The record is indeed replete with statements by City officials that there is no valid distinction between the two classes and that there are no differences between City services provided to, and general fund spending on, the two classes. For example, the City's deputy director of accounts and finance testified:

Q. The money that is generated from the gross receipts tax, is that money especially put aside for any particular purpose in the Uniontown City Budget?

A. It is put in the General Fund.

Q. And the General Fund is used to fund various city services like police, fire, rescue?

A. Yes.

. . . .

Q. Would it be fair to say sir, that you do not differentiate in provision of city services between whether or not someone sells goods or whether someone sells services, right?

A. Yes.

Q. If Mr. Mercadante's building is on fire, the fire station is going, right?

A. Yes.

Q. If Mr. Davis' law office is on fire, they're going?

A. Of course.

Q. They are not going any faster or any slower because of who pays the premium?

A. Correct.

. . . .

Q. Do you think the gross receipts tax generates substantially more than $6,000 to the city?

A. Yes.

Q. Do you, sir, know why there is a distinction in this ordinance between sellers of goods and sellers of services?

. . . .

A. No.

. . . .

Q. But you can think of no difference in terms of use of city services that would cause you to tax one group more than another, can you?

A. No.

Q. In fact, there has been no study done by the city of Uniontown that would indicate that sellers of goods use more city services than sellers of services, is there?

A. Not that I am aware of.

. . . .

Q. And has any member of city council expressed to you the reason why there is a distinction between these two groups of businesses within the confounds [sic] of this city?

A. No.

. . . .

Q. You think it is a valid question, as you indicated, correct?

A. I can see where he is coming from.

. . . .

Q. Do the sellers of services pay any tax other than business license $10.00 fee, real estate tax, if they own property, do they pay any other type of tax for provision of these services?

. . . .

A. No.

Q. What are the most lucrative businesses in this community sir?

. . . .

A. I would say your professional services.

(Notes of Testimony, May 12, 1995 (N.T.), pp. 46–51, 53–54). A City councilman next presented similar testimony. (N.T., pp. 60–61). A City councilwoman subsequently did the same, stating:

Q. In fact you can't think of any rational basis for making this distinction between

these two groups insofar as how you pay the tax?

A. No, except it is the law.

(N.T., pp. 78–79). Counsel for the Commonwealth then stipulated that other witnesses would present similar testimony if called. (N.T., pp. 90–92).

We conclude from this evidence that the trial court correctly held that Mercadante met his burden of proving the classification created by the City's Ordinance is unreasonable. The evidence adduced by Mercadante must be considered with the fact that no legitimate, rational reason is facially evident for treating restaurants, amusements and vendors of goods differently from all other businesses. Contrary to the situation in *Leonard*, for example, which is discussed further below, in this case differences between the benefits of the taxation and justifications for treating these two classes differently cannot "clearly be presumed." *Leonard* at 322, 489 A.2d at 1352. We have here a lack of a legitimate rationale advanced by the taxing authority, as well as proof that there is no such rationale, amid circumstances where no such rationale is otherwise readily apparent. We thus have no basis for discerning that the classification is anything less than arbitrary. There is no doubt that, as the trial court stated in its well reasoned opinion,

> [t]he goods providers and the service providers utilize city services to similar extents. As such, the two groups of businesses are similarly situated in this context. However, the tax targets and burdens only the goods providers. There are no significant differences between the two classes of businesses that provide reasonable and concrete justification for levying the tax only on the provider of goods and exempting the provider of services.

*Commonwealth of Pennsylvania v. Mercadante* (No. 1290 SD 1994, filed October 12, 1995), slip op. at 6.

Moreover, reviewing the facts of prior cases, as we now proceed to do, confirms that the trial court did not err in declaring the Ordinance unconstitutional.

Although the Supreme Court in *Leonard* rejected a constitutional challenge based on uniformity in taxation, its decision actually supports Mercadante's position here. In that case, a differentiation between city wage tax rates on city residents and non-residents was upheld because, specifically, those two groups were not similarly situated with respect to their needs for services provided by the city. Residents benefitted from twenty-four hour and seven days per week availability of city services, while non-resident wage earners availed themselves of the services primarily during an eight hour work day five days per week. This distinction directly contrasts with the case before us, where it is undisputed that the class taxed and the class not taxed each benefit from and avail themselves of City services to the same extent.

In fact, none of the cases cited by the Commonwealth require us to resolve this appeal in its favor. In *F.J. Busse*, a city tax on all businesses was upheld where taxpayers did not prove that certain "variations" in the taxation were unreasonable, including variations due to business being conducted outside of the city's taxing jurisdiction and due to specific statutory limitations, such as state laws providing different rates for wholesalers and exemptions for medical insurers. In *Knisely*, a tax on dealers of goods was sustained, but, as the Commonwealth itself points out, there was no challenge that service businesses were not taxed. Instead, the Court upheld a distinction in mercantile tax rates between retailers and wholesalers. A similar distinction was upheld in *D/K Beauty*, which relied on a Supreme Court decision allowing the distinction (but invalidating as arbitrary different taxation formulas for different classifications). *See Allentown School District Mercantile Tax Case*, 370 Pa. 161, 87 A.2d 480 (1952). This Court again upheld the retail/wholesale distinction in *Mandl*, where there was evidence that wholesale bakers employed more persons than retail bakers and there was an acknowledgement that tax incentives were proper to attract wholesale firms for their business. We simply are not faced with such a distinction in this case.

This Court's decision in *Equitable Life Assurance* also fails to support the Commonwealth's case. Indeed, there we accepted a constitutional challenge to a city realty trans-

**1314** ■

fer tax that exempted transfers of interests not exceeding one percent. We stated that "[t]he 1% exception ... [places] unequal tax burdens on entities enjoying an identical privilege." *Id.* at 1088.

One of the cited cases, *Hanover,* involves a distinction between goods and services, but that case also is not dispositive here. In *Hanover,* we sustained a demurrer to a complaint that a borough tax on the rendering of services only, as distinguished from sales businesses, was unconstitutional. Apparently, however, the challengers asserted only that a business tax is invalid unless it is imposed on all businesses or that a tax upon one class of business is invalid unless there are similar taxes upon all other business. We of course rejected those bare propositions, as in *F.J. Busse,* and our decision herein does not endorse them. Nevertheless, unlike in *Hanover* and *F.J. Busse,* we are faced here with specific allegations and proof that no reasonable justification exists for the particular distinction, and authority including *Leonard* mandates that such a distinction is unconstitutional.

The foregoing cases show that certain factors exist when classifications are upheld as reasonable. In *Leonard,* the relevant classes availed themselves of city services to a significantly different degree, while in this case it has been proven that there is no difference. In *Mandl,* there was evidence that one class had more employees than another, and the challengers recognized it was "legislatively appropriate" to grant tax incentives to attract big business in order to create more jobs and enhance economic growth for all establishments. Here there are no such circumstances, and it has been shown that the majority of businesses, which are not taxed, probably generate on average a considerably higher net profit than those that are taxed.

■ In sum, we are well aware of the extensive discretion held by a taxing authority and the heavy burden on one challenging the constitutionality of an ordinance. *Leonard.* However, the following propositions are clear. "Where there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional." *Leonard* at 321, 489 A.2d at 1352. "Where the benefit

received and the burden imposed is palpably disproportionate, a tax is ... an arbitrary form of classification in violation of equal protection and state uniformity standards." *Keystone Sanitation* at 697. Simply put, these statements, in light of the evidence presented to the trial court, are accurately descriptive of this case. They are directly applicable to the presumably rare case such as this, where the only reason for a distinction in the tax burden among those equally benefitted is that "it is the law."

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 24th day of May, 1996, the order of the Court of Common Pleas of Fayette County, No. 1290 SD 1994, dated October 12, 1995, is hereby affirmed.