## CITY OF ALLENTOWN

v.

## MSG ASSOCIATES, INC., Appellant.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1999.
Decided March 14, 2000.

Michael A. Gaul, Bangor, for appellant.

Martin J. Danks, Allentown, for appellee.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J. and LEADBETTER, J.

PELLEGRINI, Judge.

MSG Associates, Inc. (Taxpayer) appeals a decision of the Court of Common Pleas of Lehigh County (trial court) holding that the Business Privilege Tax of the City of Allentown (Allentown or City) does not violate Article VIII, § 1 of the Pennsylvania Constitution by levying a different tax rate on services than it does on sales at either wholesale or retail or by allowing a

deduction for brokers in sales contracts from the tax.

Allentown enacted a business privilege tax ordinance for general revenue purposes taxing the gross receipts of all business conducted within the City limits. Retail businesses were taxed at one and one-half mills, wholesale businesses at one mill, and service and rental businesses at three mills per dollar volume of gross receipts.[1]

■ Taxpayer performed general construction and demolition work within the City limits making those gross receipts subject to the three mills tax levied on service businesses. Because Taxpayer refused to pay the tax, the City brought an action against it to collect taxes due and owing. Taxpayer defended contending that the business privilege tax violated the uniformity clause of the Pennsylvania Constitution[2] because there was no basis for levying a different rate of tax on service businesses than on either wholesale or retail businesses, as well as unreasonably allowing a deduction for certain revenues

for real estate brokers but not general contractors. Holding that the tax was constitutional, the trial court found that the City's different rate of tax for wholesale, retail and service businesses was permissible because each was a separate and distinct classification allowing for a different tax rate within each of those classes. As to Taxpayer's challenge to the deduction for real estate brokers, the trial court found that Taxpayer lacked standing to challenge that deduction. Because the Business Privilege Tax ordinance was constitutional, the trial court entered a verdict against the defendant for the amount owed in back taxes. After the trial court dismissed Taxpayer's post-trial motions, it entered a judgment and Taxpayer took the instant appeal.[3]

Raising the same arguments that it raised below,[4] Taxpayer concedes a difference between sales and services and does not dispute the cap on taxes on wholesalers and retailers imposed under the Local Tax Enabling Act.[5] However, it contends

1. Article 333 of the Business Regulation and Taxation Code provides:

333.03 TAX RATE AND BASIS; BUSINESS VOLUME DETERMINATION; EXEMPTIONS AND RECORDS

There is hereby levied for the tax year 1980–1981 and annually thereafter a tax for general revenue purposes on the privilege of doing business as herein defined in the City as follows:

A. Rate and Basis of Tax

The rate of the tax on each dollar of the whole or gross volume of business transacted within the territorial limits of the City shall be as herein set forth, on retail business the rate shall be one and one-half mills (one and one-half mills means One Dollar and Fifty Cents [$1.50] per Thousand [$1,000.00] Dollars of gross volume of business), the rate of the tax for wholesale business transacted shall be one mill (one mill means One [$1.00] Dollar per thousand [$1,000.00] Dollars of gross volume of business). The rate of tax for service and rental business transacted shall be three mills (three mills means three [$3.00] Dollars per Thousand [$1,000.00] Dollars of gross volume of business). For purposes of this section, the nature of the transaction which yields the gross volume and not the principal business of the vendor shall determine

the appropriate rate of taxation, *e.g.*, any retail transactions of a wholesale dealer shall be taxed at the rate established for retail transactions rather than for wholesale transaction.

2. Pa. Const. Art. VIII, § 1, provides that, "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

3. Our scope of review of a denial of post-trial motions is whether the trial court abused its discretion or committed error of law. *Simpson v. City of New Castle*, 740 A.2d 287 (Pa.Cmwlth.1999).

4. No one has raised the issue of whether you can raise a challenge to the validity of the tax in an action to collect taxes due and owing.

5. The Local Tax Enabling Act (LTEA) of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6901 *et seq.* Section 8, 53 P.S. § 6908, limits the rates of taxation by providing that:

No taxes levied under the provisions of this act shall be levied by any political subdivision on the following subjects exceeding the rates specified in this section:

that because the City provided no reason for the taxation of service providers at a higher rate than wholesale and retail businesses, the tax should be struck down.

In attacking the constitutionality of a tax, the burden is on the taxpayer to show that the tax clearly, palpably and plainly violates the Constitution by demonstrating that a classification for purposes of taxation is unreasonable. *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985). The burden is heavy in that there is a presumption that the tax is constitutional, and, as such, the *taxpayer* must establish that no reasonable distinction exists between the classes. *D/K Beauty Supply, Inc. v. North Huntingdon Township*, 67 Pa.Cmwlth. 163, 446 A.2d 986 (1982). The test of uniformity is whether there is a reasonable distinction and difference between the classes of taxpayers sufficient to justify different tax treatment. *Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985). So long as the classification imposed is based upon some standard capable of reasonable comprehension, be that standard based upon ability to produce revenue or some other legitimate distinction, equal protection of the law has been afforded. *Aldine Apartments, Inc. v. Commonwealth*, 493 Pa. 480, 426 A.2d 1118 (1981); *Airpark Intern. I v. Interboro School District*, 677 A.2d 388 (Pa.Cmwlth.1996), *affirmed by an equally divided Court*, 558 Pa. 1, 735 A.2d 646 (1999).

In addressing a similar challenge, our Supreme Court in *F.J. Busse Company v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971), upheld the City of Pittsburgh's Business Privilege Tax Ordinance which imposed a tax on the privilege of engaging in business within the city measured by the gross receipt of a business and assessed at the rate of six mills per dollar volume of annual gross receipts, as well as having a one mill tax on wholesale and a two mill tax on retail business. The taxpayer in that case, also a construction company, similarly argued that Pittsburgh's tax violated the uniformity clause because it taxed "every person engaging in any business in the City" precluding a different rate of taxation on their business than it imposed on any other business. In upholding the difference in rates between "service" businesses and "sales" businesses as constitutional, our Supreme Court noted that the obvious defect in that argument was "that it fails to recognize that the taxing authority may distinguish between various classes of taxpayers and that the rate of taxation need be equal only with respect to taxpayers who are within the same class[,]" and that the variations in tax rates which it complained about were based upon limitations in the Enabling Act or other statutes. *F.J. Busse*, 279 A.2d at 19.

Relying on *F.J. Busse*, this Court, in *Hanover Borough Professional Association v. Borough of Hanover*, 43 Pa. Cmwlth. 47, 401 A.2d 856 (1979), upheld a uniformity challenge to the borough's business privilege tax that imposed a tax only on "services" and not on "sales" being challenged as unconstitutional because the distinction between the two was an invalid classification and violated uniformity. In dismissing that argument we stated:

[T]here is no authority to support appellant's theory that a business tax is invalid unless it is imposed upon all busi-

---

\* \* \* \*

(2) On each dollar of the whole volume of business transacted by wholesale dealers in goods, wares and merchandise, one mill, by retail dealers in goods, wares and merchandise and by proprietors of restaurants or other places where food, drink and refreshments are served, one and one-half mills; except in cities of the second class, where rates shall not exceed one mill on wholesale dealers and two mills on retail dealers and proprietors. No such tax shall be levied on the dollar volume of business transacted by wholesale and retail dealers derived from the resale of goods, wares and merchandise, taken by any dealer as trade-in or as part payment for other goods, wares and merchandise, except to the extent that the resale price exceeds the trade-in allowance.

nesses, or that a tax upon one class of business is invalid unless there are similar taxes upon all other businesses. *F.J. Busse Co. v. City of Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971) held a business privilege tax, like that of the borough here, to be valid, as against the same uniformity and classification attack which has been raised here. Although the City of Pittsburgh had a separate mercantile tax applicable to sales businesses, the existence of the mercantile tax was in no way essential to the holding in the Busse case.

*Id.* at 857.

Taxpayer contends that *F.J. Busse* and *Hanover* are inapplicable in light of our decision in *Commonwealth v. Mercadante*, 676 A.2d 1309 (Pa.Cmwlth.1996), which it asserts stands for the proportion that a tax may be struck down where the taxing authority proffers no reason for unequal rates of tax on different classes. In *Mercadante*, the City of Uniontown enacted a tax [6] that taxed the gross receipts of businesses selling goods as well as restaurants and only one service business but not other businesses providing services. The City of Uniontown could provide no rationale for the requirement that sales businesses, restaurants and amusements bore the tax burden for city services while service industry paid no tax for the same services. *Mercadante* distinguished *F.J. Busse Company*, noting that in *F.J. Busse Company*, Pittsburgh taxed all businesses but at different rates because of limits imposed by the enabling act on retailers and wholesalers and limitations in other state statutes. Rather than just declaring

the tax unconstitutional because it only taxed one type of service business, "places of amusements" and not others, we went on apparently to hold that if the City only taxed the businesses of sellers of goods and not all other businesses, then the ordinance and the tax were unconstitutional because the classification of sellers of goods and seller of services used City services to the same extent. In doing so, we quoted favorably from the trial court opinion that stated:

> [T]he goods providers and the service providers utilize city services to similar extents, As such, the two groups of businesses are similarly situated in this context. However, the tax targets and burdens only the goods providers.

*Mercadante*, 676 A.2d at 1313. Adopting that reasoning, *Mercadante* then went on to hold the tax unconstitutional as violating uniformity in that there were no significant differences in the use of City services between businesses providing services from those selling goods that provided reasonable and concrete justifications for levying a tax only on the provider of goods and exempting the provider of services from that business privilege tax. However, *Mercadante* applied the incorrect standard to determine whether the classification between services and goods was constitutional.

■ The constitutional validity of a classification, made to tax or not to tax, or tax at different rates, does not depend on whether the objects of the tax use governmental services to a similar extent. If that were so, no group could be treated differently as to tax rate if they used the gov-

---

**6.** The Uniontown Ordinance imposed the tax as follows:

a) Wholesale vendors or dealers in goods, wares and merchandise—at the rate of one mill on each dollar of the volume of gross receipts of the business transacted by him.

b) Retail vendors or dealers in goods, wares and merchandise, all persons engaged in conducting restaurants or other places where food, drink or refreshments are sold, and all persons conducting places of amusement—at the rate of one and one-half mills on each dollar of the volume of the gross receipts of the business transacted by him.

c) Wholesale and retail vendors and dealers in goods, wares and merchandise—at the rate of one mill on each dollar of the volume of the gross receipts of the wholesale business transacted by him, and one and one-half mills on each dollar of the volume of the gross receipts of the retail business transacted by him.

ernment services to a similar extent as another business sector no matter how different they were from other businesses, *e.g.*, manufacturing vis-a-vis services. What this position misperceives is that taxes are not raised on a group just to cover their use of governmental services but to fund the general operations of the government, and there need not be any correlation between the services received or the services used to justify the class. The only standard is that the classification is generally recognized and it is up to the taxpayer to prove that it was not. *Aldine Apartments, Inc.*, 426 A.2d at 1121–1122; *Airpark Intern. I*, 677 A.2d at 393–394. Because *Mercadante* incorrectly assumed that there had to be a correlation between the tax rate and the governmental services utilized to justify a difference in tax rates and is at variance with our Supreme Court's holding in *F.J. Busse*, we have no choice but to reverse *Mercadante*.

■ Other than relying on *Mercadante* and saying that the City offered no basis for treating businesses that used the same City services differently, Taxpayer offered no evidence to meet its burden that the classification is unconstitutionally invalid. This is not surprising because there is a generally recognized distinction between wholesalers and retailers that engage in sales and sales and service businesses sufficient to justify different tax treatment among those classifications. Those distinctions are recognized by businesses, *e.g.*, when the classify themselves as being in

sales—retail or wholesale (For the Trade Only)—or being in a service industry (law firms) or government, *see, e.g.*, Standard Industrial Classification (SIC) codes and the North American industry classification (NAIC) system,[7] as well as by the public and media generally by referring to the "service economy."[8] This difference is also recognized by the General Assembly in the Local Tax Enabling Act which classifies separately wholesale and retail businesses because they engage in sales of goods from all other businesses that do not for purposes of local tax distribution. 53 P.S. § 6908(2); *see F.J. Busse Company*, 279 A.2d at 19. Moreover, it recognizes that distinction when it imposes a sales tax, making sales at retail subject to that tax but not sales at wholesale. Because the difference between sales and service is similarly recognized as different making them a separate classification, and as long as the tax is uniform within that class, the uniformity clause of the Pennsylvania Constitution is not implicated. Because the City's tax is indistinguishable from that in *F.J. Busse Company*, it is controlled by that precedent, and, therefore, constitutional.

Even if the classifications of different types of businesses are justified, Taxpayer contends that the trial court erred in holding that it did not have standing to challenge the constitutionality of that provision of the Ordinance providing for a deduction for brokers who split commissions.[9] As to

---

**7.** Office of Management and Budget, Executive Office of the President, *Standard Industrial Classification Manual*, 1987, *replaced by*, Office of Management and Budget, Executive Office of the President, *North American Industry Classification System*, 1997. SIC and NAIC codes have been used by the business community for such purposes as identification in the stock market, *see* Dunn & Bradstreet Million Dollar Directory, Series 1999, and reporting with the Occupational Safety and Health Administration, *see* 29 CFR 1904.14(h). The SIC and NAIC systems divide all economic activity into categories or sectors. The NAIC system divides business into twenty sectors according to production criteria, five sectors are largely goods-produc-

ing and fifteen are entirely service-producing industries. *North American Classification Industry System*, at 3.

**8.** In addition, the Bureau of Labor and Statistics uses classifications for various reports on the state of the economy including the Current Employment Statistics and the Consumer Price Index. BLS *Handbook of Methods*, Bulletin 2490, April 1997.

**9.** Section 333.03(E) provides in relevant part that:

[G]ross or whole volume of business upon which the tax hereunder is computed shall include the gross consideration credited or

the substance of the challenge, it contends that there is no basis to give a deduction for brokers because it is a tax on gross receipts and there is no similar deduction for general contractors who pay subcontractors, and it has standing to make such a challenge.

▆▆▆▆ As to whether Taxpayer has standing to challenge the constitutionality of this provision relating to brokers, it must show that it was aggrieved by the ordinance by showing a direct interest in the subject matter, which is immediate and substantial. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). Taxpayer's challenge is based on a claim that a similarly situated group that has income that it pays out to others is treated differently than it is being treated. Subsumed in that argument is that it may be paying a higher tax than it is required to pay in taxes if brokers were required to pay. While a taxpayer does not have the direct interest necessary to allow a challenge to the amount of taxes another taxpayer pays, *See Appeal of Jostens, Inc.*, 97 Pa.Cmwlth. 106, 508 A.2d 1319 (1986), a taxpayer does have the right to challenge a taxing scheme that treats certain taxpayers differently than it treats others similarly situated that are paying the taxes. *See, e.g., Westinghouse Electric Corp. v. Board of Property Assessment, Appeals & Review*, 539 Pa. 453, 652 A.2d 1306 (1995). Because Taxpayer has a substantial, direct and immediate interest in the constitutionality of the deduction that the Ordinance provides for brokers, it has standing to challenge the propriety of excluding others that should be required to pay the tax.[10]

▆▆▆ As to the challenge to the constitutionality of the deduction, Taxpayer contends that excluding from gross receipts commissions paid from one broker to another violates the uniformity clause because it treats those payouts of brokers differently than similar payouts by other businesses, pointing to the fact that it pays subcontractors but yet is taxed on its gross receipts before any deductions. The City asserts that the broker deduction is permitted where two brokers are required to receive a portion of the brokerage fees in a "multi-listing" transaction with each broker receiving his share and being taxed upon that receipt. It asserts in its brief that a broker is also different from a general contractor in that the general contractor is neither mandated to use subcontractors for the purpose of conducting its business nor required to split its commissions with subcontractors.

The problem with the City's argument is the factual basis upon which it justifies treating brokers differently—that "multilisting" agreements require brokers each receive a portion of the sale's commission—is not in accord with the plain language of the Ordinance. While multi-listing agreements that provide for fee sharing arrangements, *e.g.*, both the listing and buyer's broker receive their respective share at closing, may justify not including the entire commission in the listing broker's gross receipts even without a specific deduction, the provision here provides a blanket deduction on all commissions paid by listing broker to another broker, no matter . what the arrangement is between the brokers *e.g.*, one broker could be an employee of the other broker. Because the Ordinance facially allows that all commissions paid by a listing broker to another broker are to

received for or on account of sales made and/or services rendered, subject only to the following allowable deductions and exemptions:

\* \* \* \*

3. Any commissions paid by a broker to another broker on account of a purchase or sales contract initiated, executed or cleared with such other broker.

10. Just as no one has raised the issue of whether you can challenge the constitutionality of a tax ordinance in a tax collection action brought by the taxing body, no one has raised the issue of whether, in such an action you can use as a defense that others similarly situated are excluded from the tax.

be deducted from the listing broker's gross receipts, no matter what the arrangement is between the brokers, no constitutionally valid distinction exists between brokers and other taxpayers that pay for work performed, making the deduction for brokers in Section 333.03(E)(3) of the Ordinance unconstitutional. *See Ritz v. Commonwealth,* 495 Pa. 1, 432 A.2d 169 (1981).

However, while the provision allowing a deduction for brokers is null and void, that does not mean that the entire business privilege tax ordinance is invalid. The severability clause contained under Section 333.0 of the Ordinance provides that if a provision of the tax is declared unconstitutional "it shall not affect or impair any of its remaining provisions" of the Ordinance. While Taxpayer's claim that the deduction from gross receipts paid by one broker to another broker regarding the sale of property unconstitutional was successful, because the tax is otherwise constitutional, its success does not excuse it from its obligation to pay the business privilege tax as levied. Accordingly, because we found the tax to be otherwise constitutional, we affirm the trial court's order entering judgment against Taxpayer.

### ORDER

AND NOW, this 14th day of March, 2000, the Order of the Court of Common Pleas of Lehigh County at No.98–C–0062, directing MSG Associates, Inc. to pay $1,668.02 in past due business privilege taxes, is hereby affirmed. Section 333.03(E)(3) of the Allentown Business Regulation and Taxation Code is unconstitutional and declared null and void.

Judge COLINS dissents.

LEADBETTER, Judge, concurring.

I concur in the result reached by the majority. I fully agree with its analysis to the extent it holds that taxing authorities need not justify a difference in tax treatment of different classifications of entities based upon their use of municipal services. However, I do not read *Mercadante* to impose any such requirement. Rather, I believe that case stands only for the proposition that the taxing authority must articulate some manner in which the classifications it has drawn give rise to a rational basis for a difference in tax rates (unless, as here, such a nexus is self-evident). As the majority notes, "The test of uniformity is whether there is a reasonable distinction and difference between the classes of taxpayers *sufficient to justify a different tax treatment.*" *F.J. Busse,* 443 Pa. at 358, 279 A.2d at 19 [emphasis added]. Further, I do not believe *Mercadante* suggests any change in the well-settled law that the ultimate burden of persuasion remains on the taxpayer challenging the classification, nor suggests that the authority's stated justification must be the subject of evidence. However, until the authority has proffered some basis for its classification, the taxpayer cannot possibly be expected to disprove the legitimacy of that basis. Conversely, if the authority has no basis at all, as in *Mercadante,* that fact alone satisfies the taxpayer's burden.

Accordingly, I would not overrule *Mercadante,* but would simply clarify its holding in this regard.