# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*AT&T Teleholdings, Inc. v. Department of Revenue*, 2012 IL App (1st) 110493

| | |
|---|---|
| Appellate Court Caption | AT&T TELEHOLDINGS, INC., f/k/a SBC TELEHOLDINGS, INC., f/k/a AMERITECH CORPORATION, and AFFILIATED COMPANIES, Plaintiffs-Appellants, v. THE DEPARTMENT OF REVENUE and BRIAN A. HAMER, as Director, Department of Revenue, State of Illinois, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-0493 |
| Rule 23 Order filed | June 1, 2012 |
| Rehearing denied | September 5, 2012 |
| Rule 23 Order withdrawn | September 24, 2012 |
| Opinion filed | September 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff corporations' objection to the methodology employed by the Department of Revenue in determining the allocation of a 2002 net capital loss for purposes of using the loss to offset an earlier capital gain was rejected on the ground that the combined apportionment method proposed by plaintiffs does not apply to net capital losses. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-COEL-008; the Hon. James Murray, Jr., Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas H. Donohoe, Catherine A. Battin, and Julie M. Skelton, all of McDermott Will & Emery LLP, of Chicago, and William L. Goldman, of Washington, D.C., for appellants. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE HOWSE delivered the judgment of the court, with opinion. Presiding Justice McBride and Justice Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, AT&T Teleholdings, Inc., formerly known as Ameritech Corporation (Ameritech), appeals from a judgment of the circuit court affirming an administrative decision of the Director of the Illinois Department of Revenue (Director) denying, in part, a corporate tax refund. The refund was based on Ameritech's request to carry back a net capital loss suffered in 2002 by its parent company, SBC Teleholdings, Inc. (SBC), to offset a capital gain that only Ameritech reported in 1999. While the parties agree that Ameritech may carry back a portion of SBC's 2002 net capital loss to offset an earlier capital gain, they disagree over the methodology used in determining how much of the 2002 net capital loss is attributable to Ameritech.[1]

¶ 2                                BACKGROUND
¶ 3    The record indicates, and the parties do not dispute, that on October 8, 1999, SBC acquired all of Ameritech's stock. For federal income tax purposes, the two companies at that time became members of SBC's federal consolidated group, which is simply a group of companies whose stock is owned by the same entity. In contrast, for Illinois income tax purposes, Ameritech and SBC remained distinct businesses until December 31, 1999. Under

---

[1]Following Justice Joseph Gordon's death, Justice Nathaniel Howse has inherited the case. Justice Howse has reviewed the briefs and record. Justice Taylor has been added as a panel member and has reviewed the briefs.

both federal and Illinois law, Ameritech was required to file two tax returns for 1999: one for the preacquisition short tax period and one for the postacquisition short tax period. After the acquisition, but before December 31, 1999, Ameritech sold its "overlapping wireless assets" and reported a capital gain of $2.7 billion from the sale. Once Ameritech combined the capital gains and losses for the postacquisition period, it reported a net capital gain of $1,582,653,052.

¶ 4      On January 1, 2000, for the purposes of Illinois income tax, Ameritech and its subsidiaries became part of SBC's unitary business group, which, unlike a consolidated group, is a group of companies that are not only related by common ownership, but whose business activities are integrated with, dependent on, and contribute to each other (35 ILCS 5/1501(a)(27) (West 2000)). Thus, from 2000 forward Ameritech and its subsidiaries were included in the Illinois combined income tax returns that SBC filed each year.

¶ 5      On its 2002 Illinois income tax return, the SBC unitary group reported a net combined capital loss of $3,634,691,714.[2] At that time, the SBC unitary group included the former members of the Ameritech unitary group, which apparently consisted of Ameritech and its subsidiaries whose business activities were sufficiently integrated to be part of that unitary business group. The net capital loss was part of SBC's business income, which could be carried back to both Ameritech's postacquisition tax period in 1999 as well as SBC's 1999 tax year. The capital loss had to be divided, however, because in 1999, Ameritech and SBC were not part of the same unitary business group. Thus, Ameritech then filed an amended income tax return for the postacquisition period in 1999, which carried back a portion of the 2002 loss to offset Ameritech's capital gain, and claimed a refund of $38,204,008 for that period. The method used by Ameritech to allocate the portion of the 2002 SBC net capital losses to Ameritech is not pertinent to this appeal.

¶ 6      The Illinois Department of Revenue (Department) audited Ameritech's amended income tax return to determine the portion of SBC's 2002 net capital loss that could be carried back by Ameritech's postacquisition tax period. In determining the carryback amount, the auditor excluded the capital losses of the members of the SBC consolidated group in 2002 that were not members of the SBC unitary group in 2002. Since companies need only be related by common ownership in order to be members of a federal consolidated group, not all members of the 2002 SBC consolidated group were members of its unitary business group, which included only those companies whose businesses are integrated. The auditor then allocated a portion of the net capital loss to each member of the 2002 SBC unitary group that reported a loss on the 2002 SBC consolidated federal income tax return. The share of the loss allocated to each member of the 2002 SBC unitary group was determined by multiplying the total net capital loss by a fraction, the numerator of which was that member's capital loss in 2002 and the denominator of which is the total capital loss of the SBC unitary business group

[2]In its federal income tax return, the SBC consolidated group reported an even larger capital loss, of $3,800,859,083, because the SBC consolidated group included members which were not part of the SBC unitary group. For federal income tax purposes, SBC carried back $1,582,653,052 of that net capital loss to its 1999 federal consolidated return to offset the gain from the sale of Ameritech's assets.

in 2002. From the members who were allocated a share of the 2002 net capital loss, the auditor then identified those who were members of the Ameritech unitary business group in the postacquisition tax period in 1999. Those two members, Ameritech and Ameritech Development, were the only ones eligible to carry back the 2002 net capital losses to the Ameritech's 1999 postacquisition tax period. As a result of the auditor's adjustments, the Department allocated 2.089%, or $83,920,965, of the net capital loss to Ameritech, which resulted in a refund of $1,969,436 for Ameritech's postacquisition tax period. Since the method used by the Department allocates a portion of the net capital loss only to those members that actually reported a loss, this method is consistent with the separate-company accounting method, which apportions to each company its separate and identifiable earnings and reports to the state the earnings of the companies within the state.

¶ 7 Ameritech protested the partial denial of its refund and proposed a revised methodology to determine the share of the net capital loss which could be used to offset Ameritech's gain during that period. In that protest, Ameritech relied on the combined apportionment method, which consists of attributing a share of the net capital loss to each member of the SBC unitary group based on each member's sales or gross receipts. Under that method, each member's share of the net capital losses was based on the proportion of that member's gross receipts to the sum of all members' gross receipts. As Ameritech noted, section 304(e) of the Illinois Income Tax Act (Act) requires this method to be used by unitary business groups to apportion their business income between Illinois and other states, where members of those business groups operate in other states. See 35 ILCS 5/304(e) (West 2002). Thus, unlike the method used by the Department, Ameritech included the loss reported by members of the 2002 SBC consolidated group that were not members of the 2002 SBC unitary business group and attributed shares of that capital loss to all members of the 2002 SBC unitary group, regardless of whether they had actually incurred a loss in 2002. Under this method, 28.2903% of the 2002 net capital loss would be apportioned to Ameritech, which would result in a carry back of $1,028,264,669 of the net capital loss and a refund of $36,234,572.

¶ 8 After an administrative hearing, the administrative law judge (ALJ) upheld the Department's partial denial of Ameritech's refund. In doing so, the ALJ noted that "section 304(e) *** contains no language authorizing or even addressing, the allocation of capital losses to members of a unitary business group for purposes of determining net capital loss carrybacks." He rejected Ameritech's claim that "every aspect of the determination of income taxable to Illinois derived by a member of a multicorporate unitary business group must be determined using formulary apportionment." He then found that the separate accounting method, which allocates shares of a loss to the members of a unitary group which actually incurred it, is expressly authorized by the Act, and that section 100.5270 of title 86 of the Illinois Administrative Code (86 Ill. Adm. Code 100.5270 (2002)) provides a method for allocating net capital losses, which was appropriately used by the Department. In addition, the ALJ rejected Ameritech's reliance on sections 100.2340 and 100.2350 of title 86 of the Administrative Code, which govern the attribution of "combined Illinois net losses," which is not the same as capital losses, among members of a unitary business group for carry back to a separate return year.

¶ 9 Furthermore, the ALJ rejected Ameritech's attack on the validity of section 100.5270 of

-4-

title 86 of the Administrative Code as waived. Similarly, the ALJ rejected, on procedural grounds, Ameritech's other alternative argument, based on section 304(f) of the Act, that the application of the Department's method of allocating the 2002 net capital loss would lead to a "distorted result" in this case. Lastly, the ALJ declined to address Ameritech's constitutional arguments because he lacked authority to adjudicate the constitutionality of the Act. The Director accepted the ALJ's recommendations in his final order.

¶ 10    The circuit court affirmed the Director's decision, and upheld the Department's reliance on section 100.5270 as authority for the Department's method of allocating the 2002 net capital loss to Ameritech. In doing so, the circuit court noted that the Department's method "focuses on 2002 capital losses experienced by Ameritech entities within AT&T." On the other hand, under Ameritech's proposed method, "a substantial part of the capital loss would come from SBC entities in 2002," which would result in a windfall to Ameritech. According to the circuit court, preventing a windfall would not "raise a constitutional issue." As to Ameritech's other arguments, the circuit court adopted the ALJ's conclusions of law by reference.

¶ 11    On appeal, Ameritech now contends that the Director erred in upholding the Department's method of computing the portion of the 2002 net capital loss that was attributable to Ameritech because that net capital loss must be distributed among the members of the 2002 unitary group in accordance with the combined apportionment method mandated by section 304(e) of the Act. According to Ameritech, section 304(e), which requires unitary business groups to apportion their business income using the combined apportionment method described above, governs the manner in which such unitary business groups must apportion their net capital losses.

¶ 12                                          ANALYSIS

¶ 13    We first note that when an appeal is taken from the entry of a judgment by the circuit court on administrative review, it is the decision of the administrative agency, not the judgment of the circuit court, which is under review. See, *e.g.*, *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). Further, the parties do not dispute that the applicable methodology to calculate the portion of the net capital loss attributable to Ameritech is a question of law, which this court reviews *de novo*. *Id.*

¶ 14    The Act taxes corporations on the "net income" earned in or as a resident of Illinois. See 35 ILCS 5/201(a) (West 2002). The Act defines net income as that portion of a taxpayer's "base income" for that tax year that is allocable to Illinois under the provisions of article 3 of the Act. 35 ILCS 5/202 (West 2002). Base income, in turn, is defined as a corporation's "taxable income" (35 ILCS 5/203(b)(1) (West 2002)), which is that taxpayer's federal taxable income, with the modifications to such federal taxable income as mandated by section 203(b) of the Act, with additions and subtractions that are not pertinent to this case. See 35 ILCS 5/203(e) (West 2002); *Bodine Electric Co. v. Allphin*, 81 Ill. 2d 502, 506 (1980). Thus, the reportable taxable income for purposes of federal income taxes provides the "starting point upon which State tax liability is computed." *Bodine*, 81 Ill. 2d at 506.

¶ 15    Under those provisions, once a corporation's base income is computed based on its

federal taxable income, it is allocated to Illinois in accordance to the provisions of article 3 of the Act, including section 304(e), which governs the apportionment of base income from unitary business groups. Section 304(e) provides that where two or more corporations engage in a unitary business, a part of which is conducted in Illinois by one or more members of the group, the business income attributable to Illinois by those members shall be apportioned by means of the combined apportionment method. 35 ILCS 5/304(e) (West 2002). As previously mentioned, a unitary business group is a group of affiliated corporations "whose business activities are integrated with, dependent upon and contribute to each other." 35 ILCS 5/1501(a)(27) (West 2002). The combined apportionment method, as described above, assigns a share of a unitary group's income to Illinois based on the percentage of sales which took place inside Illinois. 35 ILCS 5/304(h) (West 2002). In fact, a unitary business group is treated as one single taxpayer for the purpose of Illinois income tax returns. 35 ILCS 5/502(e) (West 2002).

¶ 16 The combined apportionment method for the base income of unitary groups recognizes that income earned by unitary businesses "cannot be accurately apportioned by use of separate accounting since that method does not take account of each operation's contribution to the income of the business as a whole; it is also subject to manipulation by shifting income to States with more favorable tax climates." *Citizens Utilities Co. of Illinois v. Department of Revenue*, 111 Ill. 2d 32, 39 (1986). Ameritech correctly notes that prior to the enactment of section 304(e), which now requires the use of the combined apportionment method, our supreme court held that such method should be applied to determine the percentage of net income attributable to Illinois for activities of each corporate member of a unitary business group. *Caterpillar Tractor Co. v. Lenckos*, 84 Ill. 2d 102, 114 (1981). In doing so, the court stated:

> "Typically, the corporation's transactions and the income derived from them actually represent the business efforts of the individual corporation, plus efforts of other and possibly all members of the unitary business operation. As a result, the claimed income of each member of the group standing alone does not, in a real sense, reflect the conducting of a unitary business operation because the income is not attributable solely to the effort of the particular corporation." *Id.* at 108.

¶ 17 We do not dispute that the combined base income of a member of a unitary group is to be apportioned to Illinois under the combined apportionment method. However, at issue in this case is not the manner in which to apportion the base income of the SBC unitary group, but only the methodology to allocate SBC's 2002 net capital loss, which, as explained below, is a pre-apportionment element of those members' base income. As the circuit court correctly noted, section 304(e) specifically addresses the apportionment of a corporation's base income to arrive at each member's net income and is silent on the question of apportionment of net capital losses. In fact, as noted above, it is only after a corporation's base income is computed that a portion of it is allocated to Illinois, and as the Department notes, net capital losses and the carry back of those losses are elements of a corporation's federal taxable income, which is the starting point to compute its base income, before it is apportioned among members of a unitary business group. Such taxable income, in turn, is determined as if a corporate taxpayer "had filed a separate return for federal income tax purposes for the

taxable year and each preceding taxable year for which it was a member of an affiliated group." 35 ILCS 5/203(e)(2)(E) (West 2002).

¶ 18 Furthermore, as the ALJ correctly noted in his recommendation, the Department's regulation, section 100.5270, provides that the allocation of capital losses to be carried back to a prior year are governed by Treasury Regulations §§ 1.1502-21 and 1.1502-22, which govern federal consolidated net capital losses. See 86 Ill. Adm. Code 100.5270 (2002). Those federal regulations, in turn, provide that the share of the net capital losses attributable to a member of a federal consolidated return is the ratio of that member's own losses divided by the losses incurred by any other members who have incurred losses that year. See Treas. Reg. §§ 1.1502-22(b)(3), 1.1502-21(b)(2)(iv)(B) (as amended in 1999). Those regulations are consistent with the principle that net capital losses are a preapportionment element of a taxpayer's base income, which is computed before such base income is apportioned among the members of a unitary business group. Section 100.5270(a) states:

"The combined base income shall be determined by first computing the group's combined taxable income and then modifying this amount by the combined group's combined Illinois addition and subtraction modification amounts.

1) Combined net income. The designated agent will determine combined base income by treating all members of the unitary business group *** as if they constituted a federal consolidated group and by applying the federal regulations for determining consolidated taxable income ***. ***

Example 1. Corporations A and B properly make an election under IITA Section 502(e), or are properly required to file a combined return under [Act] Section 502(e). On a separate return basis, A's federal taxable income would be a loss of ($500). This amount does not include an excess capital loss of $75 pursuant to Internal Revenue Code Section 1211(a). B's federal taxable income is $1,000 of which $100 is a capital gain. As a result of applying Treasury Reg. Section 1.1502-11 and Section 1.1502-22 (26 CFR 1.1502-22), the combined federal taxable income for A and B is $425." 86 Ill. Adm. Code 100.5270(a) (2002).

¶ 19 In turn, Treasury Regulation § 1.1502-22, incorporated by section 100.5270, states, in pertinent part:

"If any consolidated net capital loss that is attributable to a member may be carried to a separate return year under the principles of § 1.1502-21(b)(2), the amount of the consolidated net capital loss attributable to the member is apportioned and carried to the separate return year (apportioned loss)." Treas. Reg. § 1.1502-22(b)(3) (as amended in 1999).

¶ 20 Treasury Regulation § 1.1502-21(b)(2), incorporated in § 1.1502-22(b)(3), which addresses the allocation of net operating losses of a federal consolidated group to allow them to carry back a portion of those losses to a separate return year, and whose principles govern the manner in which net capital losses are carried back to separate return years, provides:

"[T]he percentage of the [consolidated net operating loss] attributable to a member shall equal the separate net operating loss of the member for the year of the loss divided by the

sum of the separate net operating losses for that year of all members having such losses. For this purpose, the separate net operating loss of a member is determined by computing the [consolidated net operating loss] by reference to only the member's items of income, gain, deduction, and loss, including the member's losses and deductions actually absorbed by the group in the taxable year (whether or not absorbed by the member)." Treas. Reg. § 1.1502-21(b)(2)(iv)(B) (as amended in 1999).

¶ 21 Accordingly, under section 100.5270(a)(1), the net capital losses of the members of a unitary group are preapportionment elements of each member's base income, to be allocated among them in the manner prescribed by Treasury Regulations §§ 1.1502-21 and 1.1502-22. Under those rules, net capital losses are allocated and carried back in the same manner as net operating losses on a federal consolidated return, and such allocation is based on the proportion of a member's own losses to the total loss incurred that year. See Treas. Reg. §§ 1.1502-22(b)(3), 1.1502-21(b)(2)(iv)(B) (as amended in 1999). Thus, this rule clarifies that, contrary to Ameritech's contention, the section 304(e) requirement that the base income of a unitary group is to be allocated under the combined apportionment method does not apply to net capital losses, which are a preapportionment element of that base income.

¶ 22 The Department in this case, as explained above, allocated the SBC 2002 net capital loss to the members of the SBC unitary business group by multiplying the total net capital loss by a fraction, the numerator of which was each individual member's own separate net capital loss and the denominator of which was the 2002 SBC total net capital loss. That methodology, which is consistent with a separate company accounting, follows the allocation prescribed by section 100.5270(a)(1) and Treasury Regulations §§ 1.1502-22 and 1.1502-21.

¶ 23 Ameritech argues that interpreting section 100.5270(a)(1) to prescribe the allocation of the net capital loss of a unitary group member in the manner described above is inconsistent with section 1401(b)(2) of the Act, which states that the Department shall promulgate regulations that require all taxpayers that are members of the same unitary business group to be treated as one taxpayer. 35 ILCS 5/1401(b)(2) (West 2002). According to Ameritech, it is "perverse" to interpret one of those regulations, namely, section 100.5270(a)(1), to require the net capital loss of a member of a unitary group to be allocated on a separate basis as prescribed by the federal regulation under sections 1.1502-22 and 1.1502-21. In a related argument, Ameritech maintains that if the Department's interpretation of section 100.5270 is correct, the regulation is invalid because it would then conflict with section 1401(b)(2), as well as section 502(e) of the Act, which provides that all members of a unitary business group shall "be treated as one taxpayer" (35 ILCS 5/502(e) (West 2002)), and section 304(e) of the Act, which, as mentioned above, requires members of unitary groups to use the combined apportionment method to compute their net income.

¶ 24 Those contentions are unpersuasive for several reasons. The language of sections 1401(b)(2) and 502(e) of the Act is silent on the manner on which members of unitary business groups are to allocate preapportionment elements of their base income, such as net capital losses. Section 502(e) simply requires members of a unitary business group to be treated as a single taxpayer so as to file a combined return. See 35 ILCS 5/502(e) (West 2002). Similarly, 1401(b)(2) merely directs the Department to promulgate rules requiring the treatment of unitary group members as a single taxpayer for the purposes of filing a

combined return and determining their joint tax liability. 35 ILCS 1402(b)(2) (West 1991). Likewise, as noted above, section 304(e) requires members of a unitary business group, after each member's base income is separately computed, to apportion their cumulative base income using the combined apportionment method, but it likewise is silent on the allocation method of each element that constitutes that base income. Section 100.5270, on the other hand, does not require members of a unitary business group to allocate their combined base income using any method other than the combined apportionment. Instead, it provides that before that base income is apportioned, it must be computed by applying the pertinent federal regulations, which, as explained above, require any net capital losses incurred by those members to be allocated in a manner consistent with the separate-company accounting method. 86 Ill. Adm. Code 100.5270(a)(1) (2002); Treas. Reg. §§ 1.1502-22(b)(3), 1.1502-21(b)(2)(iv)(B) (as amended in 1999). Thus, there is no inconsistency between those provisions and section 100.5270(a)(1), which simply provides that before the base income of a unitary group is apportioned among its members under the combined apportionment method, such base income is computed in accordance with the federal regulations which govern, *inter alia*, the allocation of net capital losses.

¶ 25    Furthermore, contrary to Ameritech's contention, our supreme court's decision in *Caterpillar Tractor*, 84 Ill. 2d at 106-14, does not support the proposition that the combined apportionment method prescribed by section 304(e) of the Act must be used to allocate elements of a taxpayer's base income before such base income is apportioned to members of a unitary business group. The taxpayer in that case sought to apportion its already computed base income to members of a unitary business group before section 304(a) was enacted. *Id.* at 107-08. While the court in that case recognized the appropriateness of utilizing the combined apportionment method to allocate the base income of a unitary business group, and thereby compute the net income apportionable to each member for Illinois tax purposes, the decision is silent with respect to the allocation of preapportionment elements of those group members' base income.

¶ 26    Similarly, Ameritech's reliance on *Barclays Bank PLC v. Franchise Tax Board*, 512 U.S. 298, 307 (1994), *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 174 (1983), and *Edison California Stores, Inc. v. McColgan*, 183 P.2d 16, 18 (Cal. 1947), is misplaced. *Barclays Bank PLC*, 512 U.S. at 307, and *Container Corp.*, 463 U.S. at 174, involve the constitutionality of California's world-wide combined apportionment systems for a taxpayer's income, but do not address whether that method would apply to a particular element of that taxpayer's base income. Likewise, *Edison California Stores*, 183 P.2d at 18, merely stands for the principle that the net income of members of a unitary business group should be computed using the combined apportionment method.

¶ 27    Ameritech next argues that section 203(e)(2)(E) of the Act, which, as previously noted, states that the taxable income of a corporation that filed a consolidated tax return shall be determined as if that corporation had filed a separate return, is inapplicable to members of a unitary group. According to Ameritech, all elements of a unitary group member's base income must be computed under the combined apportionment method because under section 502(e) of the Act, all members of that group must be treated as one taxpayer. In support of that contention, Ameritech cites section 100.2405(c)(5) of title 86 of the Illinois

Administrative Code, which provides:

"[F]or a corporation that is a member of an affiliated group of corporations filing a federal consolidated income tax return for the taxable year, taxable income determined as if such corporation had filed a separate return federally for the taxable year and for each preceding taxable year for which it was a member of an affiliated group and also determined as if the election provided under Internal Revenue Code section 243(b)(2) had been in effect for such years. (IITA Section 203(e)(2)(E)). *However, for purposes of computing the combined taxable income and combined base income of a unitary business group for the purposes of IITA Sections 304(a) and 502(e), Section 100.5270 requires the unitary business group to use federal consolidated return regulations[.]*" (Emphasis added.) 86 Ill. Adm. Code 100.2405(c)(5) (2008).

¶ 28    We disagree with Ameritech's interpretation of that regulation. Section 502(e), which requires members of a unitary business group to file a combined Illinois income tax return, as discussed above, is silent on the allocation method of elements of a taxpayer's base income, such as net capital losses. In fact, the emphasized language of section 100.2405 does not appear to suggest that section 203(e)(2)(E) is inapplicable to members of a unitary business group. Instead, it confirms that the federal regulations incorporated by reference in section 100.5270 govern the computation of the combined taxable income and base income of such members of a unitary business group. As discussed above, the allocation of net capital income of unitary business group members, pursuant to those federal regulations, is based on the ratio of that member's capital losses to the total capital losses of the unitary group.

¶ 29    Ameritech next contends that even if section 100.5270(a)(1) is valid, Illinois later "decoupled" its rules governing the allocation and carry back of all losses incurred by unitary business groups when sections 100.2350(c) and 100.2340(a) of title 86 of the Administrative Code came into effect. According to Ameritech, those regulations have replaced the concept of net operating losses with that of "Illinois net loss," and now require that Illinois net loss be apportioned among members of a unitary group under the combined apportionment method. In support of that contention, Ameritech notes that section 100.2350(c) states:

"The portion of a combined Illinois net loss attributable to a member of a [unitary business] group is an amount equal to the combined Illinois net loss of the group multiplied by a fraction, the numerator of which is what would have been the separate Illinois net loss of such corporation had a combined return not been filed, and the denominator of which is the sum of what would have been the separate Illinois net losses of all members of the group in such year having such losses. The separate Illinois net loss of a member of the group shall be determined pursuant to Sections 100.2320 and 100.2340 above." 86 Ill. Adm. Code 100.2350(c)(3) (2002).

¶ 30    Section 100.2340 of title 86 of the Code, in turn, provides, in pertinent part, that "[i]f a combined return is not filed, any such loss will be apportioned among all members of the [unitary business] group based on each member's apportionment factors in Illinois as compared to their combined apportionment factors everywhere." 86 Ill. Adm. Code 100.2340(a) (1987). Thus, Ameritech maintains the allocation of any losses by a member of

a unitary business group, for Illinois tax purposes, is now governed by sections 100.2340 and 100.2350 which require Illinois net losses to be allocated pursuant to the combined apportionment method, not by the federal regulations described above.

¶ 31    While we agree that sections 100.2340 and 100.2350 now govern the apportionment of Illinois net losses by members of a unitary business group, they have no bearing on the allocation of net capital losses among members of such group. Those two sections followed the amendment of section 203(b) of the Act, which changed the manner in which taxpayers may deduct their net operating losses, which are now incorporated in the concept of Illinois net losses, as codified in section 207 of the Act. Net Illinois losses are negative net income, or the amount of loss, after a taxpayer applies to its base income the modifications enumerated in section 203(b) of the Act and the allocation provisions of article 3 of the Act. 35 ILCS 5/207(a) (West 2002). A net operating loss, however, is the excess of deductions over that party's income derived from any source. See 86 Ill. Admin. Code 100.2330 (2005); Treas. Reg. § 1.1502-21(e) (as amended in 1999); 26 U.S.C. § 61(a) (1988). Thus, it appears that the difference between an Illinois net loss and a net operating loss is that an Illinois net loss is a post-apportionment deduction, which can be carried back and forward against the net income of a taxpayer, while a net operating loss is a preapportionment subtraction to a taxpayer's base income. A net capital loss, on the other hand, is the excess of losses from the sale of a taxpayer's capital assets over any gains from sales of other capital assets. 26 U.S.C. § 1211(a) (1988); 26 U.S.C. § 1222(10) (1988). Such loss is, therefore, readily distinguishable from Illinois net losses, whose apportionment is governed by sections 100.2340 and 100.2350.

¶ 32    In fact, Ameritech does not appear to argue that net capital losses are part of Illinois net losses. Instead, it apparently contends that since Illinois has replaced its deductions for net operating losses with the deduction for Illinois net losses, and since the federal regulations that govern the allocation of net capital losses follow the allocation principles of the federal rules governing net operating losses, net capital losses are no longer governed by the federal regulations. According to Ameritech, the new provisions, which replaced the concept of net operating losses with Illinois net losses have superseded section 100.5270(a)(1) insofar as it incorporated by reference the allocation methods for both net operating losses and net capital losses described by Treasury Regulations §§ 1.1502-21 and 1.1502-22. That contention is unpersuasive.

¶ 33    As the Department correctly notes, section 100.2300(c) explicitly states that "[t]he treatment of capital losses is separate and apart from the rules governing Illinois net losses and Illinois net loss deductions. Capital losses will continue to be governed by federal provisions." 86 Ill. Adm. Code 2300(c) (2000). Thus, regardless of whether the federal regulations incorporated by reference in section 100.5270(a)(1) have any applicability to Illinois net losses, it is clear from that language that the federal regulations, sections 1.1502-22 and 1.1502-21, are the only provisions that govern the allocation of capital losses to members of a unitary group.

¶ 34    Ameritech claims that the section 100.2300(c) refers only to the federal rule which mandates that capital losses can be deducted only to the offset capital gains, and no other kind of income. In doing so, Ameritech cites to the provision of section 100.2300(c) that

-11-

states that "[f]or federal purposes, capital losses are permitted only to the extent of capital gains and the carryback of capital losses is permitted only to the extent of capital gains in the carryback year." 86 Ill. Adm. Code 100.2300(c) (2000). However, it is well established that "[w]hen the words of a statute are unambiguous, *** 'judicial inquiry is complete.' " *Connecticut National Bank v. Germain*, 503 U.S. 249, 254 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Here, the language of the first two sentences of section 100.2300(c) contains no restrictions to the extent to which federal regulations continue to govern the allocation of capital losses. Instead, the first sentence broadly states that the treatment of capital losses is "separate and apart from rules governing Illinois net losses," which squarely contradicts Ameritech's contention that the only federal rules applicable to capital losses are the ones which limit the extent to which those losses may be used to offset a gain.

¶ 35    This conclusion seems consistent with the fact that net capital losses have historically been treated differently than net operating losses. For instance, unlike net operating losses and Illinois net losses, it is undisputed that, as noted above, capital losses may only be used to offset capital gains. 86 Ill. Adm. Code 2300(c) (2000); 26 U.S.C. § 1211(a) (1988). Treating capital losses differently than Illinois net losses for apportionment purposes also appears consistent with the principles for the use of the combined apportionment method in computing the net income of members of a unitary business group. As previously discussed, the combined apportionment of base income is the most accurate method to compute the net income of a unitary business group member because the income generated by that member "is not attributable solely to the effort of the particular corporation." *Caterpillar*, 84 Ill. 2d at 108. Illinois net losses, as described above, result when a taxpayer's net income happens to be negative, or a loss. 35 ILCS 5/207(a) (West 2002). Thus, that type of loss results from the operations of the unitary business group as a whole, and it therefore is more accurately measured under the combined apportionment method, which takes into account the activities of all members of the group. Net capital losses, on the other hand, are only the excess losses from sales of capital assets over the gains from sales of other capital assets. 26 U.S.C. § 1222(10) (1988). Capital assets, in turn, are a taxpayer's property which does not include, *inter alia*, real property used in its trade or business, or supplies of a type regularly used or consumed by the taxpayer in the ordinary course of business. 26 U.S.C. § 1221(a)(2), (8) (1988). It appears from that language that the net capital losses of the member of a unitary business may not have the same connection to the operations of the unitary business as a whole, and may not result from the activities of other members to the same extent as its net income or its Illinois net loss. Thus, section 100.2300, which provides that capital losses, unlike Illinois net losses, continue to be governed by federal regulations, which in turn, provide for the apportionment of those losses on a separate basis, are consistent with the principle of accurately allocating those losses to each member.

¶ 36    Ameritech next appears to argue that the Department's apportionment method of the 2002 SBC net capital loss is erroneous because it is inconsistent with the Department's apportionment of the net capital gain reported by the Ameritech Group in its postacquisition short tax period in 1999 and the apportionment of SBC Unitary Group's business income in 2002. Ameritech explains that the Department used the combined apportionment method in

order to calculate how much of Ameritech's 1999 gain and SBC's 2002 income was taxable in Illinois. However, Ameritech has failed to state a cogent argument to support the notion that such inconsistent treatment should be grounds for reversal of the Department's decision, or to cite any authority in support of that proposition as required by Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008). Ameritech merely states that the Department "schizophrenically" treats a net capital loss reported by a member of a unitary business group as being attributable solely to that member, while it treats net capital gains as apportionable among the entire unitary business group. Since plaintiff has failed to comply with Rule 341(h) and articulate a cohesive legal argument supported by authority, we cannot reach the merits of its contention. *Bank of Ravenswood v. Maiorella*, 104 Ill. App. 3d 1072, 1074 (1982).

¶ 37    We further note that in 2002, the combined apportionment method was only used to apportion SBC's base income pursuant to section 304(a) of the Act, after the base income was already computed. Additionally, it appears that in 1999, the Department simply relied on the combined apportionment method to allocate only the combined base income of the Ameritech unitary group, not to apportion the net capital gain earned by each member of the group when computing those members' individual preapportionment base income.

¶ 38    In fact, section 1.1502-22, which governs the computation of both capital gains and losses, provides that both capital gains and losses of members of a consolidated group are to be aggregated and determined for the entire group as a whole for the year that those gains or losses are reported. See Treas. Reg. § 1.1502-22(a), (b) (as amended in 1999). However, as explained above, that same regulation unequivocally provides that when net capital losses of a member of that group are carried back to a separate return year, that member's share of those losses are apportioned based on the ratio of that member's losses to the group total losses, as the Department has done in this case. Thus, even if the apportionment of SBC's 2002 net capital losses, solely for carry back purposes, was not computed in the same manner as Ameritech's 1999 net capital gains, as part of Ameritech's income during that period alone, that differentiation is consistent with the Department's regulations governing the apportionment of such gains as losses. Accordingly, the Department's method used to allocate SBC's 2002 net capital losses does not appear improper merely because of the manner in which it apportioned Ameritech's 1999 net capital gain, or SBC's 2002 base income.

¶ 39    Ameritech next contends, alternatively, that if the Department's method of allocating the 2002 SBC net capital loss is permitted under section 304(e) of the Act, Ameritech would be entitled to an alternative method of apportionment under section 304(f) of the Act. Section 304(f) provides that "[i]f the allocation and apportionment provisions of subsections (a) through (e) and of subsection (h) do not fairly represent the extent of a person's business activity in this State, the person may petition for, or the Director may require" an alternative method "to effectuate an equitable allocation and apportionment of the person's business income." 35 ILCS 5/304(f) (West 2002). Ameritech maintains that the Department's method, which allocates 2.3089% of the $3.6 billion 2002 SBC net capital loss, allows the carry back of one-thirteenth of the portion of the net capital loss that would be allocated to Ameritech under that company's method, namely, 28.2903% of that net capital loss. As a result,

Ameritech's 1999 net capital gain was reduced merely from $1.6 billion to $1.5 billion under the Department's method, while that gain would have been reduced all the way down to $0.6 billion under Ameritech's method.

¶ 40 The regulations interpreting section 304(f) provide that an alternative method is appropriate "if the application of the statutory formula will lead to a grossly distorted result in a particular case." 86 Ill. Adm. Code 100.3390(c) (1993). However, an alternative apportionment method may not be invoked "merely because it reaches a different apportionment percentage than the required statutory formula." *Id.* In fact, the party who seeks to utilize an alternative apportionment method has the burden of "proving by clear and cogent evidence that the statutory formula results in the taxation of extraterritorial values and operates unreasonably and arbitrarily in attributing to Illinois a percentage of income which is out of proportion to the business transacted in this State." *Id.*

¶ 41 For instance, in *Lakehead Pipe Line Co. v. Department of Revenue*, 192 Ill. App. 3d 756, 764-66 (1989), this court held that there was no gross distortion so as to justify an alternative apportionment method where the method used did not take into account the company's Illinois capital assets or employee activity, both of which were important to determine the extent of the company's Illinois business. In that case, the court found that such gross distortion was not present where the difference between the income apportioned to Illinois under the statutory formula and the income that would be apportioned taking those factors into account was between 30% and 140%, depending on the year. *Id.* at 764. In contrast, the type of evidence that justifies an alternative apportioned under section 304(f) is illustrated in *Miami Corp. v. Department of Revenue*, 212 Ill. App. 3d 702, 706-10 (1991). In that case, the statutory apportionment formula led to a gross distortion of the taxpayer's income-producing activities in Illinois, where that formula failed to take into account the intangible value of oil and gas leases derived from its Louisiana land and, consequently, did not reflect that 80% of the taxpayer's income was generated by those intangible assets. *Id.* at 709-11. The court noted, however, that the fact that the statutory formula caused an increase in the taxpayer's Illinois tax liability from $719,000 to $2.4 million was not, in itself, indicative of malapportionment merely because of the size of the increase. *Id.* at 708.

¶ 42 Here, aside from comparing the amount of the 1999 capital gain that it would be able to offset using the combined apportionment method of the 2002 SBC net capital loss, Ameritech reiterates its previous arguments that section 304(a) mandates that method of apportionment of a unitary group member's base income and that section 502(e) requires those members to be treated as one taxpayer. As discussed above, however, sections 304(a) and 502(e) do not require the combined apportionment method to be employed to allocate net capital losses, which are a pre-apportionment element of the base income. Thus, we conclude that the mere fact that the use of the combined apportionment method to allocate those losses would change Ameritech's Illinois tax liability for 1999 does not mean that the use of the Department's method caused a gross distortion in Ameritech's income attributable to Illinois.

¶ 43 Lastly, Ameritech contends that if the Department's method to allocate the 2002 SBC net capital loss is consistent with the Act, the statute would violate the due process and commerce clauses of the United States Constitution. It maintains that the Department's use

of the separate-company accounting method to allocate the 2002 SBC net capital losses is unconstitutional because it denies Ameritech the appropriate carry back amount of those net capital losses and, as a result, it imposes a tax on Ameritech's 1999 net capital gains that is "out of all appropriate proportion" to the business transacted by Ameritech in Illinois.

¶ 44　It is well established that to prevent states from taxing income generated outside their borders, the due process and commerce clauses require that "there be 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' " *Allied-Signal, Inc. v. Director, Division of Taxation*, 504 U.S. 768, 777 (1992) (quoting *Miller Brothers Co. v. Maryland*, 347 U.S. 340, 344-45 (1954)). Thus, while states have "wide authority to devise formulae for an accurate assessment of a corporation's intrastate value or income," there is a "necessary limit on the States' authority to tax value or income that cannot in fairness be attributed to the taxpayer's activities in the State." *Id.* at 780. However, "[t]he Constitution does not 'invalidat[e] an apportionment formula whenever it *may* result in taxation of some income that did not have its source in the taxing State.' " (Emphasis in original.) *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 169-70 (1983) (quoting *Moorman Manufacturing Co. v. Bair*, 437 U.S. 267, 272 (1978)). Instead, similarly to the requirement for an alternative method under section 304(f), a taxpayer must show " 'by "clear and cogent evidence" that the income attributed to the State is in fact "out of all appropriate proportions to the business transacted ... in that State" [citation] or has "led to a grossly distorted result," [citation].' " *Id.* at 170 (quoting *Moorman*, 437 U.S. at 274).

¶ 45　Here, Ameritech does not argue that the net capital gains taxed by Illinois in 1999 were not generated within this state. Instead, Ameritech claims that it should have been apportioned a larger amount of the 2002 SBC net capital losses. In support of its argument that the tax imposed on its 1999 net capital gains is disproportional to the business that Ameritech transacted in Illinois, Ameritech relies largely on the difference between the amount of losses that Ameritech sought to allocate, namely, $1,028,264,699, and the amount that the Department agreed to allocate to Ameritech, namely, $83,920,965. Similar to the analysis of section 304(f), above, the mere difference in the apportioned amount, however large, is not itself sufficient to show that the Department's methodology is unconstitutionally disproportionate. See *Citizens Utility Co. of Illinois v. Department of Revenue*, 111 Ill. 2d 32, 53 (1986) ("bare percentages [of the increase in taxation resulting from the Department's formula] without explanation are not helpful" to determine whether the Department's apportionment is unconstitutional).

¶ 46　Further, Ameritech claims that the Department acted inconsistently in applying the separate-company method to the 2002 SBC net capital loss among members of the SBC unitary group because it previously used the combined apportionment method to attribute Ameritech's 1999 net capital gains among the members of the Ameritech unitary group. That contention is unpersuasive for the reasons discussed in paragraphs 45 and 46.

¶ 47　Ameritech's reliance on *Container Corp.*, 463 U.S. at 181, is misplaced. In that case, the court rejected a taxpayer's argument that the state had unconstitutionally applied a combined apportionment method to allocate the income of its foreign subsidiaries. In doing so, the court found that when a unitary business exists, separate accounting is not constitutionally

-15-

required because the income of members of such unitary business groups comes from the operation of the business as a whole, and it becomes "misleading" to characterize such income as having "a single identifiable source." (Internal quotation marks omitted.) *Id.* at 181. However, merely because the combined apportionment method to allocate a taxpayer's income is not unconstitutional, it does not follow from that that the use of the separate accounting to allocate an item of a taxpayer's base income is necessarily disproportionate to the business that the taxpayer transacts in Illinois. In fact, Ameritech does not question the Department's apportionment of its base income, but only of the 2002 SBC net capital losses, which, as discussed above, is a preapportionment element of Ameritech's base income. Accordingly, we conclude that Ameritech has failed to meet its burden to prove that the Department's method of allocating the portion of the 2002 SBC net capital loss to be carried back to offset Ameritech's 1999 net capital gains is unconstitutional.

¶ 48    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 49    Affirmed.